**C & C TILE AND CARPET COMPANY, INC., an Oklahoma corporation, Appellant,**

v.

**Myrna L. ADAY, a/k/a Myrna L. DoRemus and Bruce DoRemus, Appellees,**

and

**Anchor Concrete Company, an Oklahoma corporation, Allied Plumbing Company of Tulsa, Inc., an Oklahoma corporation, and Van's Plumbing, Inc., an Oklahoma corporation, Appellants.**

No. 61463.

Court of Appeals of Oklahoma, Division No. 2.

Feb. 19, 1985.

Released for Publication by Order of Court of Appeals March 22, 1985.

Sharon L. Corbitt, Wolfe & Corbitt, Tulsa, for appellants.

R. Jay McAtee, Tulsa, for appellees.

REIF, Judge.

Materialmen appeal summary judgment denying enforcement of their liens due to lack of statutory pre-enforcement notice to the residential property owners. We affirm.

Pretrial discovery developed the following undisputed facts. Owners Myrna Aday and her husband Bruce DoRemus had lived at the residential property in question since 1977 and up to February 14, 1982, when a fire damaged and partially destroyed the dwelling. From that date, Owners temporarily resided in a rented apartment until the work was substantially completed and the house restored to a habitable condition. They moved back into their house around August 5, 1982. Owners retained Shamrock Enterprises, Inc., as the primary or general contractor to make the repairs. Shamrock obtained materials and services from subcontractors, C & C Tile and Carpet Company, Inc., Anchor Concrete Company, Allied Plumbing Company of Tulsa, Inc., and Van's Plumbing, Inc. Shamrock completed all contracted repairs and was paid in full by Owners. However, Shamrock took bankruptcy to discharge its debts to these businesses.

Materialmen all timely filed liens against the property. C & C brought suit to determine priority of the liens and to foreclose its lien. C & C joined Century Bank which held a mortgage securing the loan to pay for the repairs and the other Materialmen as defendants. (Century Bank does not join this appeal.) It developed that neither Shamrock nor any of the Materialmen had given Owners notice required by 42 O.S. 1981 § 142.1, that unpaid charges for labor and materials could result in liens being filed against the property.

Owners moved for summary judgment to deny enforcement of the liens because of failure to have received the statutorily required notice. Materialmen countered by asserting the notice provision did not apply. They contended the property in question was not "presently occupied as a dwelling by an owner" at the time of repairs and when they furnished supplies and services. They point to the fact that Owners were residing in an apartment away from the residential property for about five months until repairs were substantially completed. Materialmen argued for a literal construction based on the ordinary meaning of the words in the statute. They further asserted that the plain, ordinary meaning of "presently occupied" is actual physical occupancy at the time of the work. The trial court sustained Owner's motion for summary judgment. From this order, Materialmen appeal.

Both Materialmen and Owners advance substantially the same arguments on appeal as they did before the trial court. We agree with the trial court and parties that this case presents a question of first impression in Oklahoma. We must determine whether Owners who are temporarily residing away from their dwelling while it is being repaired because of the exigency presented by the damage, are afforded the benefits and protection of 42 O.S.1981

§ 142.1. Restated, is such property "presently occupied as a dwelling by an owner" as prescribed by the statute? We conclude it is.

We commence consideration of this issue with a reminder that the intention and purpose of the legislature in enacting this provision is of primary importance. While generally the language used in a statute is indicative of purpose and intent, it is not the sole source nor is it controlling. As pointed out in *Keck v. Oklahoma Tax Commission*, 188 Okla. 257, 259, 108 P.2d 162, 164 (1940), where the legislative intent is plainly discernible from the provisions of a statute when considered as a whole, the real purpose and intent of the legislative body will prevail over the literal import of the words employed.

In order to give an act a reasonable and sensible construction in keeping with the legislature's intent, the entire act must be considered. *Public Service Co. v. Northwest Rogers County*, 675 P.2d 134, 139 (Okla.1983) (footnotes omitted). In addition, it is well established that the title of a legislative enactment is to be considered [1] and is a proper guide [2] and a valuable aid [3] to ascertain legislative intent. Section 142.1 under consideration as stated in 1980 Okla.Sess.Laws, ch. 359, § 1, states as its title:

AN ACT RELATING TO LIENS; *REQUIRING NOTICE* PRIOR TO ENFORCEMENT OF CERTAIN LIENS; *SPECIFYING RIGHTS;* DEFINING TERM; PROHIBITING CERTAIN ACTS AND PROVIDING PENALTIES; LIMITING REQUIREMENT OF NOTICE; DIRECTING CODIFICATION; AND PROVIDING AN EFFECTIVE DATE. (Emphasis added.)

The title of the Act, considered together with the language of statutory provisions enacted under it, and with other

---

1. *Swanson v. City of Tulsa,* 633 P.2d 1256, 1257 (Okla.Crim.App.1981).

2. *Phillips v. Oklahoma Tax Commission,* 577 P.2d 1278, 1282 (Okla.1978); *Perry v. Oklahoma City,* 470 P.2d 974, 979 (Okla.1970).

3. *Taylor v. State,* 377 P.2d 508, 510 (Okla.Crim. App.1962).

statutes dealing with materialmen's liens, clearly indicates its purpose. That purpose is the creation and regulation of the relative rights of landowners and materialmen in their dealings with primary contractors.

■ It is significant that the enactment of section 142.1 gives residing owners for the first time benefit of a specific pre-enforcement notice of potential materialmen's liens as part of their rights. Section 142.1 is, therefore, remedial in nature. Our supreme court has held that remedial statutes should be *construed liberally* to afford all the relief within the power of the court which the language of the act indicates the legislature intended to grant. *Russett School v. Askew*, 193 Okla. 102, 104, 141 P.2d 575, 577 (1943), citing *Shimonek v. Tillman*, 150 Okla. 177, 1 P.2d 154 (1931).

■ In addition, the notice is also a *prerequisite* to the enforcement of such a lien. The supreme court pointed out the strict importance of such conditions precedent in *Hughes Drilling Co. v. Morgan*, 648 P.2d 32, 35 (Okla.1982). The court stated where "a statutory right is created which did not exist at the common law and the same statute fixes the conditions upon which the right may be asserted, the conditions are an integral part of the right." These are "substantive conditions [and] the observance of [them] is essential to the assertion of the right."

■ Materialmen's liens are such statutorily created rights. *First National Bank of Pauls Valley v. Crudup*, 656 P.2d 914, 917 (Okla.1982); *Melton v. Quality Homes, Inc.*, 312 P.2d 476, 479 (1957). While they are accorded liberality in enforcement after the lien attaches, they enjoy no preference in determining the existence of the lien. *American Tank & Equipment Co. v. T.E. Wiggins, Inc.*, 170 Okla. 504, 505, 42 P.2d 115, 117 (1934). *See also Republic Bank & Trust Company of Tulsa v. Bohmar Minerals, Inc.*, 661 P.2d 521, 523 (Okla.1983).

■ We also find significant that this provision does not protect all residential property but rather is concerned only with residential property personally used by the owner. It is analogous to the protection afforded the family dwelling under the concept of homestead. Occupancy in the context of homestead protection is not applied in a narrow or limited sense and does not always require actual occupancy, but is extended to include constructive occupancy. *Kerns v. Warden*, 88 Okla. 297, 213 P. 70 (1923). Such a broad, liberal construction which focuses on use and intent, best promotes the purpose and fulfills the protection of this law.

■ We similarly believe that some breadth, such as constructive occupancy, must be recognized in the definition of "occupied" under section 142.1. A residing owner's repair of damage to his dwelling restoring it to a habitable condition, is a reasonable and substantial *residential* use of the premises even though physical presence is temporarily absent. It also is objective evidence of intent to continue the use for such a purpose.

■ Such an interpretation does not negate the requirement of "presently occupied." We believe the legislature was using the term "presently" to signify current *habitual* use of the property as opposed to a future unacted upon intent. We find "presently occupied" to be similar to "present enjoyment" which Black's Law Dictionary, 1065 (5th ed. 1979), defines as:

> The immediate or present possession and use of an estate or property, as distinguished from such as is postponed to a future time.

■ The mere fact that an owner temporarily vacates the residence where he lives, out of necessity for it to be repaired or restored, is not inconsistent with a present, actual use and enjoyment of the property as a residence. As in homestead, it is such habitual residency and enjoyment the legislature was intending to protect and not merely physical presence. A statute should be interpreted to produce a reasonable result and to promote, rather than to defeat, the general purpose and policy of

the law.[4] Construing the statute liberally and reasonably, we conclude that the legislature intended homeowners residing in their residence at the time of damage, who only temporarily vacate it during the course of repairs, and who return upon the completion of such repairs, to "presently occupy" the property as their dwelling within the meaning of 42 O.S.1981 § 142.1.[5] Accordingly, they are due the benefit of notice and other protections of the Act. Materialmen's liens which are not founded upon the notice required by the Act are unenforceable.

 Where it appears that there is no substantial controversy as to any material fact and that a party is entitled to judgment as a matter of law, summary judgment is properly granted. *Heavner v. Farmers Insurance Co.*, 663 P.2d 730, 732 (Okla.1983). On review to this court, all inferences and conclusions to be drawn from the underlying facts in the record presented below should be viewed in the light most favorable to the party opposing the motion. *Rose v. Sapulpa Rural Water Co.*, 631 P.2d 752, 754 (Okla.1981). In the instant case, Materialmen failed to give notice as required by statute, therefore rendering their liens unenforceable. There being no substantial controversy as to any material fact, the trial court properly granted summary judgment to Owners as a matter of law.

Finding the trial court to have properly construed 42 O.S.1981 § 142.1, and to have properly granted summary judgment, we affirm.

BACON and MEANS, JJ., concur.

---

4. *Phelps v. State,* 598 P.2d 254, 257 (Okla.Crim. App.1979).

5. *See also Barker v. Brownsburg Lumber Co.,* 399 N.E.2d 426, 430 (Ind.App.1980), where the court held real estate was "owner-occupied" by parties who had lived in a house under a contract to purchase prior to a fire, and temporarily left while the fire damage was being repaired, and returned to reside in the house upon completion of repairs.