Black, P.J.
This is an action brought by three separate sets of plaintiffs,- *128 Gopala Dwarakawath and Shashikala Dwarakanath; Mark Levy; and Rachelle Halpern, (hereinafter collectively referred to as “the plaintiffs”), pursuant to G.L. c. 30A, for judicial review of a decision of the Brookline Rent Control Board (hereinafter referred to as “the Board”), denying each of the plaintiffs a Certificate of Exemption with respect to certain premises located at 147 Longwood Avenue, in the Town of Brookline, Massachusetts. Because the principal legal issue involved in each case is identical, all three were consolidated into a single proceeding for hearing purposes before a judge of the Brookline Division. The judge reversed the Board’s decision in each of the three cases. A judgment was entered annulling the Board's decision and declaring that each plaintiff was entitled to a Certificate of Exemption. The Board, claiming to be aggrieved by the judgment of the court, now seeks appellate review of the court’s determination.
The appellate record discloses that an application for exemption under Section 9A of the Brookline Rent and Eviction Control By-Law (Article XXXVIII of the By-Laws of the Town of Brookline, hereinafter referred to as “the By-Law”) was filed by each of the plaintiffs with respect to the premises located at 147 Longwood Avenue on the basis that each of the three units was located in a three family owner-occupied house at the time the units were converted to condominiums, as provided by Regulation 29, Section 12, arid Section 3(b)(5) of the said By-Law. Hearings were held during early December, 1986. The evidence adduced'during these hearings tended to show that 147 Longwoo'd Avenue is the' type of property commonly known as a three family row house. It is a three story, wooden frame building, with a brick veneer, built sométim'e in the early 1900’s. There are three residential units in the building, one on each floor. Each floor had six rooms, with the exception of the first floor,'which lost half of the front room, due to the entry-way foyer. Mark Levy acquired the property March 29,1982, as the result of a mortgage foreclosure proceeding. At the time of its purchase, the building was badly in need of repairs due to the poor financial conditiori of the previous owner, who had deferred needed maintenance, with the result that the building required extensive renovation. At. the time Mark Levy acquired the property, he was living with his .wife at 611 Washington Street in Brookline, which was a two-family house, in which they occupied the second and third floor apartment.
An extensive inspection of the premises at 147 Longwood Avenue by Mark Levy from the roof down disclosed that the roof was at least twenty years old and had been patched on several occasions. He concluded that it had to be completely replaced. Additional structural repairs were required around the skylight. The fire wall which separated 147 and 149 Longwood Avenue had missing bricks and needed to be pointed. Down spouts were broken and needed replacing. The rear brick wall to 147 Longwood Avenue had open seams so that water was coming through the exterior wall during storms, ¡ Floor boards to the rear porch on each of the three floors had rotten and missing boards. Exterior doors would only partially close due to being badly. warped. Graffiti had been sprayed on the walls adjacent .to thedoors. Most.of the storm windows were missing or smashed. Few had a complete set .of-screens., There was very little paint on the exterior .wood frames. Several windows were broken and others had no sash cords. Sashes were rotten and many did not lock properly/ In the interior, the plaster walls'were “m'doshy” and in some places could be pushed back and forth as much as 6’V Light fixtures were defective with wires protruding. Wood floors were badly warped ’ *129 to the extent that some boards were 6" to 8" high at the top of t.he warp.
Radiators had been disconnected in places and were sitting on the floor. Debris was scattered throughout the basement, with bags of trash, old pieces of furniture, mattresses, old clothing, cans, broken doors and windows lying around. There was water on the floor in the boiler room, rust on the outside of the boiler and wires hanging everywhere. There was no clue as to what the wires had been attached to or where they came from. The electrical service was antiquated with old 15 amp service boards and porcelain insulation. Various fuses were lying around on the floor.
An inspection of the interior of the three apartments disclosed generally the same run-down condition. Tiles were falling off the bathroom walls and in the first floor bathroom, if a person was taking a shower, the water ran through the exterior wall and down the outside of the building. The toilet was loose and the floor around it was rotten. Ceilings were water stained. Although all three of the apartments were occupied, health violations were legion throughout the building.
Upon taking title on March 29,1982, Mark Levy went to the Brookline Board of Health to ascertain the full extent and nature of the health code violations in order that he could cure them. He later hired an architect and undertook the arduous task of a comprehensive renovation of the entire building.
The second and third floor tenants voluntarily moved out during the first week in June, and the first floor tenant vacated later the same month. Although the renovations to 147 Longwood Avenue were commenced shortly after Mark Levy assumed ownership, the bulk of the repairs were made after the tenants vacated the building. The record is replete with the litany of repairs made during June, July and August, together with the nature and scope of work done by various craftsmen and tradesmen, as well as numerous cancelled checks for the payments made. Repairs to the building were completed near the end of August so that Mark Levy occupied his unit for the first time early in September, 1982. During renovations at 147 Longwood Avenue he and his wife continued to live at 611 Washington Street.
At the time Mark Levy acquired 147 Longwood Avenue, he also acquired 149 Longwood Avenue because the bank holding the mortgage on both properties declined to allow either property to be sold separately. Inasmuch as he lacked sufficient financing to handle both properties, he worked out an arrangement pursuant to which he immediately sold 149 Longwood Avenue, the deed to which was dated the same day he acquired title to that property, namely March 29, 1982. He also had an agreement with B&L Realty Trust which resulted in his transfer of 147 Longwood Avenue to the Trust on July 30,1982. The agreement (apparently oral) further provided for Mark Levy to purchase one of the units in the building should it be subsequently converted to condominiums. This arrangement was concluded by sale of unit 3 at 147 Longwood Avenue by deed dated September 2,1982, from Max B. Brenner and Thomas R. Venables, as Trustees of B&L Realty Trust to Mark E. Levy and Gail S. Levy, as tenants by the entirety. Previously, however, a master deed had been recorded (August 3, 1982) by Max Brenner and Thomas R. Venables as Trustees of B & L Realty Trust creating Longwood Estates Condominium Trust. The original beneficiaries of B & L Realty Trust were Mark Levy (25%), Max Brenner (25%) and Grove Investment Company (50%), and the Trustees of Longwood Estates Condominium Trust were Mark E. Levy and Max B. Brenner. • ' ’
The record further indicates that unit 1 at 147 Longwood Avenue was sold *130 to the plaintiff, Rachelle Halpern, by Max B. Brenner and Thomas R. Venables, as Trustees of B & L Realty Trust, by deed dated October 6,1982, and that she moved into the unit on or about December 1,1982. Unit 2 was sold to Jonathan and Amy Deland by deed from the said trustees dated August 2,1982, and was occupied by them early the same month. This unit was later transferred to the plaintiffs, Gopala and Shashikala Dwarakanath, by deed dated December 31, 1983.
At some later time, a question apparently arose as to the status of the three units under the Brookline Rent Control By-Law with the consequence that in May, 1985, Mark Levy filed for a Certificate of Exemption. His application was denied and he sought judicial review before ajustice of the Brookline Division. On July 24,1986, the Board’s decision was affirmed on the ground that he was at the time of the application for exemption, not an owner-occupant of the three-unit building. In the decision, however, the court pointed out that the Board had “erred in not recognizing that 147 Longwood Avenue was exempt from the rent control ordinance at the time of condominium conversion in the summer of 1982.” Mark Levy instituted a new proceeding in which the two other unit owners joined. Additional hearings were conducted by the Board, and on February 24, 1987, the Board denied the exemptions as to all three, making the following findings of fact and determinations of law:
Determination Of Issues Of Fact:
1. 147 and 149 Longwood Avenue are two attached buildings with three units in each.
2. 147 and 149 Longwood Avenue were purchased by Mark E. Levy from Daniel Rubin, by deed dated March 29, 1982 and recorded March 30, 1982.
3. Mark E. Levy transferred 149 Longwood Avenue to Alan Sharaf, by deed dated March 29, 1982.
4. At the time Mark E. Levy purchased the property, in March, 1982, there were tenants living in units, 1, 2 and 3 at 147 Longwood Avenue.
5. At the time Mark E. Levy purchased 147 Longwood Avenue, he was living at 611 Washington Street, Brookline, a building which he owned.
6. The tenants in units 1, 2 and 3 at 147 Longwood Avenue lived at the said property during the months of March, April and May, 1982.
7. Mark E. Levy asked the tenants in all three units at 147 Longwood Avenue to leave the premises because the building was in need of rehabilitation, during which, he said it could not be occupied.
8. The tenants in unit 1 at 147 Longwood Avenue moved out in late June, 1982, and the tenants in units 2 and 3 at 147 Longwood Avenue moved out during the first week of June, 1982.
9. At the time Mark E. Levy purchased 147 Longwood Avenue, health code violations and structural problems existed at the property.
10. Shortly after purchasing 147 Longwood Avenue, Mark E. Levy undertook a comprehensive physical renovation of the property, which was performed by various contractors.
11. Mark E. Levy made payment to the various contractors who performed the renovation work at 147 Longwood Avenue in spring and summer 1982.
12. Mark E. Levy transferred title to 147 Longwood Avenue to B & L Realty Trust, Max Brenner and Thomas Venables, trustees, on July 30, 1982.
13. The renovation of 147 Longwood Avenue continued after the title to the property passed to B & L Realty Trust.
14. The schedule of beneficiaries of B & L RealtyTrust list the beneficiaries as Mark Levy, 25".., Max Brenner, 25".., Grove Investment Company, 50"..,
*131 15. A master deed, creating Longwood Estates Condominium, 147 Longwood Avenue, as filed by Max Brenner and Thomas Venables, Trustees of B & L Realty Trust, on August 3, 1982.
16. The Declaration of Trust, naming Mark E. Levy and Max Brenner trustees of Longwood Condominium Trust, was dated August 2, 1982.
17. The first unit deed for unit 1 at 147 Longwood Avenue, was dated October 6, 1982, and recorded October 13, 1982, from Max Brenner and Thomas Venables, trustees of B & L Realty Trust, to Rachelle Halpern.
18. Rachelle Halpern moved into unit 1,147 Longwood Avenue on December 1, 1982.
19. The first unit deed for unit 2 at 147 Longwood Avenue, was dated August 2, 1982, and recorded August 3, 1982 from Max Brenner and Thomas Venables, trustees of B & L Realty Trust, to Jonathan and Amy Deland.
20. Jonathan and Amy Deland moved into unit 2,147 Longwood Avenue in early August, 1982.
21. The first deed for unit 3 at 147 Longwood Avenue was dated September 2,1982, recorded September 2,1982, from Max Brenner and Thomas Venables, trustees of B & L Realty Trust to Mark E. Levy and Gail S. Levy.
22. Mark E. Levy and Gail Levy moved into unit 3,147 Longwood Avenue on or about September 2,1982.
23. Prior to that time, Mark E. Levy and Gail Levy lived at 611 Washington Street, Brookline.
24. At the time Mark E. Levy and Gail Levy first moved into 147 Longwood, the building had been converted to condominium units, and the unit they moved into, unit 3, was a condominium unit.
25. At the time of conversion to condominiums of 147 Longwood Avenue, Mark E. Levy had a 25% ownership interest in the property.
26. At the time of conversion to condominiums of 147 Longwood Avenue, Max Brenner had a 25% ownership interest in the property.
27. At the time of conversion to condominiums of 147 Longwood Avenue, Grove Investment Company had a 50% interest in the property.
Determination of Issues of Law
1. At the time of conversion to condominiums of 147 Longwood Avenue, Mark E. Levy’s principal place of residence was 611 Washington Street.
2. Occupancy, in accordance with Section 3 (b) (5) of Article 38 of the By-Laws of the Town of Brookline, must be “sufficiently meaningful to justify that the unit occupied is the principal place of residence of the occupant.” Fane v. Brookline Brookline Rent Control Board, No. 840047, decided June 21, 1984.
3. “The meaning of‘owner-occupied’ is not. . .plain and unambiguous. Resort mustbe had to the context and purpose of the enactment. In that exercise, the experience and judgment of the administrative entity is entitled to respect.” Metsler v. Brookline Rent Control Board, No. 850587, decided July 10, 1986.
4. Occupancy, as interpreted by the Board, is not merely constructive occupancy, but actual use of the unit as one’s principal place of residence. Fane, supra.
5. Allowing the term “occupancy” to be interpreted as requiring merely “constructive occupancy" does not satisfy the policy considerations surrounding the adoption of the “owner-occupied two or three family exemption” enunciated in Marshal House, Inc. v. Rent Control Board of Brookline, 358 Mass. 686, 695 (1971).
6. Mark E. Levy did not occupy 147 Longwood Avenue at the time of conversion of the property to condominiums in accordance with Section 3 (b) (5) of *132 Article 38 of the By-Laws of the Town of Brookline.
7. Mark E. Levy was not an owner-occupant of a three-family house at the time of conversion to condominiums in accordance with Section 3 (b) (5) of Article 38 of the By-Laws of the Town of Brookline.
The plaintiffs sought judicial review before a justice of the Brookline Division. By memorandum of decision dated November 27, 1987, the Board’s decision was reversed and annulled. Notwithstanding the voluminous record, which exceeds five hundred pages, all parties agreed as to what is the pivotal issue, namely, whether at the time of conversion to the condominium form of ownership, was Mark Levy an “owner-occupant” of a three-family residence within the meaning of Section 12 of Regulation 29 and Section 3 (b) (5) of the By-Law. The latter defines as exempt from rent control the rental units in an owner-occupied three family home. Inasmuch as there is no dispute that the premises in question consisted of three units and was owned by Mark Levy at the relevant point in question, the real focus is on the meaning of the term “occupied” or “occupancy”. In its decision, the Board obviously ruled that the term “owner-occupant” means actual use of the property as the owner’s principal place of residence. The court, on the other hand, took a more flexible approach, holding that where, as here, the purchasers of a property acquire the premises in an uninhabitable condition and immediately set about renovating the property with the good faith intention of making it their residence as soon as it is ready for occupancy, the requirements of the By-Law are satisfied. In effect, the court concluded that there can be a constructive occupancy under the By-Law through the owners absence, due solely to the condition of the premises, during its rehabilitation, for use as the owners’ principal place of residence. We conclude that the court did not err in its ruling.
In his ruling, the trial judge noted that the Board was unable to cite a single case where it had held that physical residence was an indispensablesiwe qua non of occupancy under circumstances such as those presented by this case. The trial judge relied, at least in part, upon Harris v. North American Ins. Co., 190 Mass. 361, 368-369 (1906) which held that a building was not an “unoccupied building” within the meaning of an insurance policy during the time that the owner was awaiting completion of the construction process and during which the premises could not be inhabited.
Our own review of the case authorities, both in this and other jurisdictions, discloses that there is substantial authority for recognizing constructive occupancy during brief periods of time while the owner is away from his residence for the purpose of having the premises renovated due to fire etc. and during which the premises were uninhabitable. (See C & C Tile and Carpet Company, Inc. v. Aday, et al, 697 P.2d. 175 (Okl. App. 1985); Barker v. Browsburg Lumber Company, Inc., 399 N.E. 2nd 426 (Inc. App. 1980)). In a New Jersey case, bearing significant similarity to the one presently before this court, the Appellate Division of the Superior Court was called upon to interpret the requirement in a state statute that certain premises be “owner-occupied.” The court held that the statute should be construed to avoid "an anomalous, unreasonable, inconceivable or absurd result.”The court concluded that a person who purchased a two-family house for the express purpose of immediately residing therein renders the premises “owner-occupied” within the meaning of its statute. (See Bradley v. Rapp, 334 A.2d 61 (1975)). Recently, in the case of Kinchla v. Rent Control Board of Brookline, 25 Mass. App. Ct. 656, at 659 (1988), the Appeals Court noted that ”[B]y retaining *133 flexibility without ‘analytical focus on legalistic forms,’. . .the board can protect the rights of an applicant equitably entitled to the exemption. . .’’This principal is equally applicable here. Clearly, the Board’s finding of fact, as amply supported by the evidence, shows that Mark Levy acquired 147 Longwood Avenue for the sole purpose of making it his principal place of residence. The property was not in a livable condition when acquired, notwithstanding the fact that all three apartments were then occupied under what could euphemistically or best be described as squalid conditions. He immediately commenced comprehensive renovation of the premises, and upon the completion of this work, moved into the unit. While due weight must be given to the experience, technical competence and specialized knowledge of the Board, as well as to the discretionary authority conferred upon it (Moulton v. Brookline Rent Control Board, 385 Mass 228, 232-33 (1982)), under the circumstances of this case, the trial judge was correct in concluding that the property was “owner-occupied" for the purpose of the By-Law. Since the building was an “owner-occupied” three family house at the time of conversion to condominiums, it was not subject to rent control and could lawfully be converted to condominiums. Hence, each of the plaintiffs is entitled to a Certificate of Exemption.
As respects the Mark Levy case, the Board attempted to reopen the proceedings to enlarge the record to show that he had received a Certificate of Exemption from rent control for 611 Washington Street on the grounds that he was the owner-occupant of the two family dwelling. The trial judge denied the motion because the court had historically resisted efforts to enlarge the record of the case once it had reached the court, except by agreement of the parties. The trial judge noted that the case was then before the court for the second time and that the Board had ample opportunity to set forth its position in the record. He noted that the matter which the Board was attempting to raise was new and that it was unfair to allow new issues to be raised at that stage of the proceeding. We conclude that the trial judge did not abuse his discretion in denying the motion. The record shows that the matter was first before the Board in May, 1985, and that the plaintiff, Mark Levy, testified early in the proceeding that he had resided with his wife at 611 Washington Street while repairs were being made at 147 Longwood Avenue. Consequently, the Board has had ample opportunity to raise the issue on any number of occasions. The matter has now been in the course of hearings or appellate review for well over three years. To require that this appeal be decided on the record submitted under these circumstances was clearly an exercise of sound discretion by the trial judge. In conclusion, therefore,'thedecision of the trial judge reversing and annulling the Board’s decision denying the Certifícate of Exemption to the plaintiffs is affirmed, and it is ordered that the Certificates of Exemption be issued forthwith, subject of course to any further appellate review.