Dear Representatives, Emil L. Grieser,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. Do the provisions of 21 O.S. 481 (1981), et seq., asamended, prohibit a county employee from receiving considerationfor raises, lateral transfers or promotions while a personrelated to that employee within the third degree of affinity orconsanguinity is an officer of the same county?
 2. Do the provisions of 21 O.S. 481 (1981), et seq., asamended, apply to situations where blanket raises are given toall county employees on an equal basis?
 3. Does the disability created by 21 O.S. 481 (1981), etseq., as amended, apply to non-related members of a Board ofCounty Commissioners, if the affected commissioner does no' voteto provide a raise, lateral transfer or promotion to his or herrelative?
¶ 1 Oklahoma prohibits certain hiring practices falling under the rubric of "nepotism" and provides penalties for governmental officers who disregard its strictures. The key statute is 21O.S. 481 (1981), which provides:
 It shall be unlawful for any executive, legislative, ministerial or judicial officer to appoint or vote for the appointment of any person related to him by affinity or consanguinity within the third degree, to any clerkship, office, position, employment or duty in any department of the state, district, county, city or municipal government of which such executive, legislative, ministerial or judicial officer is a member, when the salary, wages, pay or compensation of such appointee is to be paid out of the public funds or fees of such office. Provided, however. that for the purposes of this chapter, a divorce of husband and wife shall terminate all relationship by affinity that existed by reason of the marriage, regardless of whether the marriage has resulted in issue who are still living.
 I.
¶ 2 Your questions pertain specifically to county level employees and to employment actions by county commissioners. In that, connection, it is important to note that while 21 O.S.481 applies to the hiring practices of all governmental employers, 21 O.S. 484 (1989), is much broader in scope, covering, in addition, potential state employees. 21 O.S. 484
provides as follows:
 Any person related within the third degree by affinity or consanguinity to any elected member of the legislative, judicial or executive branch of the state government shall not be eligible to hold any clerkship, office, position, employment or duty for which compensation is received in the same agency as such elected member of the state government.
(Emphasis added).
¶ 3 Thus, at the state level, in addition to the prohibition on an officer to appoint or vote for the appointment of a relative under the Act, the individual affected is likewise statutorily unable to accept an appointment. This additional prohibition, however, would not apply to the county level employees implicated by your questions, because 21 O.S. 484 is restricted to state level employees.
 II.
¶ 4 The question of whether a person already on the payroll may receive a raise, lateral transfer, or promotion while a relative covered under the Act is in office was addressed tangentially by this office in A.G. Opin. No. 88-045. However, the concerns raised in your opinion request require additional review and discussion. Our starting point must be the statute itself, and, because this is a criminal statute, we begin with the rule that the statute must be construed liberally in favor of an accused and strictly against the State. State v. Humphrey, 620 P.2d 408
(Okl.Cr. 1980). Such a construction of 21 O.S. 481 would yield a result in which a violation would lie only where it is clear that an "appointment" is involved. Without additional guidance from the Legislature as to what constitutes an appointment, we must turn to the definitions of the words of the statute as used in their ordinary sense. 25 O.S. 1 (1981). See also, C CTile and Carpet Co., Inc. v. Aday, 697 P.2d 175 (Okla.Ct.App. 1985). No special definition of "appointment" is apparent in 21O.S. 481. As defined by the Webster's Third InternationalDictionary, (1981), an appointment is the ". . . designation of a person to hold a nonelective office or perform a function." Under this approach, a violation would occur where a county commissioner designated or voted to designate a person prohibited by 21 O.S. 481 to a county position.
¶ 5 The leading case on this issue is still Reddell v. State,170 P.2d 273 (Okl.Cr. 1918), in which the Court of Criminal Appeals noted the limitation placed on the Act by the reference to an "appointment" to a position. In Reddell, a member of the governing board of a school district was convicted of unlawfully causing the issuance of a district warrant to his son-in-law in payment for services that the son-in-law had performed for the district in the form of "odd jobs." The Court of Criminal Appeals reversed the conviction for the reason that in order to constitute a violation of the Act, an "appointment" must be made. Services performed on an occasional and irregular basis did not, to the court, constitute an "appointment."
 III.
¶ 6 From the foregoing analysis, and being mindful of the teaching of Humphrey, it appears that some promotions would invoke the prohibitions under the Act. Because there is no controlling definition of "promotion," we turn to the Webster'sThird International Dictionary, where we find that "to promote" means "[t]o advance in station, rank or honor." This implies that the old job or rank is left behind and that a new position is assumed. Under the definition of "appointment" previously noted, a promotion by a commissioner of a related employee would constitute an appointment prohibited by 21 O.S. 481. This interpretation is in accord with the public policy behind the act to avoid favoritism to relatives and to obtain the best qualified person for a position. (Attorney General Opinion, February 13, 1959, to Carroll J. Bowie, Garvin County Attorney.) In determining whether a particular promotion constitutes an "appointment," we conclude that the best test is that articulated by the United States Supreme Court in Patterson v. McLean CreditUnion, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), holding that discriminatory promotions are actionable under42 U.S.C.A., 1981, "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." 105 L.Ed.2d at 156. Using this approach, routine or virtually "automatic" promotions or grade increases occurring by virtue of longevity, for example, would not constitute a promotion (read "appointment") for purposes of 481 liability. "Competitive" or "discretionary" promotions, on the other hand, and to the extent that they create a new relationship between the employee and employer, would violate 21O.S. 481. A promotion, however, may well be open to competition among the best qualified candidates for a position. In this context, the act would be violated where a prohibited relative employed by the county is promoted into a new position. Whether any particular promotion constitutes an appointment is, of course, a question of fact the answer to which is beyond the scope of an Attorney General's opinion.
 IV.
¶ 7 In contradistinction to the considerations involved in promotions, there would not appear to be a violation of the act where a county commissioner voted to give a public employee a raise. Clearly, no "designation to a position" is involved. Similarly, approval for blanket raises, such as those created by legislation, would be merely a ministerial function and would not involve an "appointment to a position."
 V.
¶ 8 You also ask us to address the lawfulness of lateral transfers in the nepotism context. Unfortunately, this raises a question of fact which this office cannot answer in an official opinion of the Attorney General. In this regard, whether or not a lateral transfer would involve an appointment is not clear without developing the facts of each particular case. While a lateral transfer could involve an appointment, it could likewise involve only a reassignment of duties with no attendant appointment. It is not clear whether or not competition is involved or if a disjunction between the old position and the lateral position is involved. (See the discussion in Part III) Given the foregoing, such a question would have to be answered based upon the particular circumstances of each individual case.
 VI.
¶ 9 A person violates 21 O.S. 481 when the person is an officer under the statute and when the person appoints or votes, for the appointment of someone who is ineligible under the statute. There is no mention of liability for an officer who fails to vote so long as the other voting officers are not related to the proposed appointee. The prohibitions of 481 do not extend to the proposed appointee, and such a prohibition should not be read into the Act. See, State v. Humphrey, supra.
¶ 10 Again, strictly construed against the State, and in light of the provisions of 21 O.S. 484, the ineligibility created under the act would apply only to state level positions. In accordance with Humphrey, this would not provide penalties to an employee at the county level.
¶ 11 Of course, it must be noted that this opinion does not reflect any sanctions for nonfeasance or omissions of duties upon a Board member who willfully fails to vote in such action of the Board. 22 O.S. 1181.1 (1981).
¶ 12 Your opinion request also suggests that the nepotism statutes violate state or federal prohibitions against Bills of Attainder. Because we find that there is no blanket prohibition against the employment actions involved in your opinion request, there is no need to provide a detailed discussion of that issue. For the purposes of this opinion, it is clear that the Act is not an unlawful Bill of Attainder.
¶ 13 It is, therefore, the official opinion of the AttorneyGeneral that:
 (1) (a) The provisions of 21 O.S. 481 (1981) et seq. asamended, prohibit a county commissioner from promoting or votingfor the promotion of a person related to that county commissionerwithin the third degree of affinity or consanguinity where thepromotion constitutes a new and distinct relationship between theemployer and employee; however, routine or automatic promotionswould not violate the Act; whether any given promotionconstitutes an "appointment" within the meaning of 21 O.S. 481is a question of fact which cannot be answered in an officialopinion of the Attorney General.
 (b) The provisions of 21 O.S. 481 do not prohibit such acounty commissioner from voting to give such a county employee araise.
 (c) Whether the act prohibits such a county commissioner fromvoting for a lateral transfer for such a county employee involvesa question of fact for which this office cannot provide anofficial opinion.
 (2) the provisions of 21 O.S. 481 (1981) et seq., asamended, are not applicable to situations where blanket raisesare given to all county employees on an equal basis; and
 (3) the provisions of 21 O.S. 481 (1981) et seq., asamended do not carry criminal penalties for a county commissionerwho fails to vote for the raise, lateral transfer or promotion ofa person related to the commissioner within the third degree ofaffinity or consanguinity.
 To the extent that it is inconsistent with this opinion,Attorney General Opinion No. 88-045 is hereby modified.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
JAMES ROBERT JOHNSON ASSISTANT ATTORNEY GENERAL