2004 OK CIV APP 96

MEL STEVENSON & ASSOCIATES, INC. d/b/a Spec Building Materials, Plaintiff/Appellant,

v.

Roy D. GILES, Defendant/Appellee,

and

Wes–Star Construction, Inc., Wescon Companies, Inc., and Larry Chambers, Defendants.

No. 99,461.

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 16, 2004.

Tracy W. Robinett, Robinett & Osmond, Tulsa, OK, for Plaintiff/Appellant.

James Vogt, Reynolds, Ridings, Vogt & Morgan, P.L.L.C., Oklahoma City, OK, for Defendant Roy D. Giles/Appellee.

KEITH RAPP, Judge.

¶ 1 The trial court plaintiff, Mel Stevenson & Associates, Inc. d/b/a/ Spec Building Materials (Spec), appeals a decision finding that its materialman's lien filed against property owned by the trial court defendant, Roy D. Giles (Giles), was invalid for lack of notice to Giles.[1]

## BACKGROUND

¶ 2 Giles owned and occupied a residence in Newcastle, Oklahoma. The residence was completely destroyed by fire. Giles and his wife elected to rebuild at the same location. Wes–Star Construction, Inc. (Wes–Star) was retained as the contractor. Giles lived at another location while the home was being reconstructed, but he kept his telephone number and mailing address. Giles moved back when the rebuilt home was habitable.

¶ 3 Giles learned of a special roofing and decided to have it incorporated in the house being reconstructed after the fire. Giles learned that Spec supplied the roofing materials and consulted with Spec about the materials. Spec was made aware of the circumstances about the fire and Giles' rebuilding of the residence. Giles specified the roofing materials from Spec in the building contract.

¶ 4 Spec supplied the roofing materials and windows to the project on account with Wes–Star. Prior to doing so, a representative from Spec investigating Wes–Star's credit, ascertained that, at Giles' request, the County Assessor removed the property as improved property from the tax rolls due to the fire.

¶ 5 A dispute arose between Wes–Star and Spec. Spec was not paid for any materials supplied. Spec then filed a materialman's lien, but Spec never complied with 42 O.S. 2001, § 142.1.[2] Subsequently, Wes–Star paid for the windows, leaving a balance due for the roofing materials of $16,924.00. Spec amended its lien and sought foreclosure.[3]

¶ 6 Giles defended on the ground that the lien was invalid for lack of Section 142.1 notice. The trial court segregated the issue for nonjury trial, and after a hearing and briefs, ruled that the lien was invalid for lack of compliance with Section 142.1. Spec appeals.

## STANDARD OF REVIEW

¶ 7 Where the facts are not disputed, an appeal presents only a question of law. *Baptist Bldg. Corp. v. Barnes*, 1994 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69. The appellate court has the "plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.*, 1996 OK 125, n. 1, 932 P.2d 1100. Matters involving legis-

---

1. Giles' wife was originally named as a party. The record indicates that she died during the pendency of the case. An amended petition filed in January 2002, does not name her as a party. The claim against Giles is an *in rem* claim to foreclose a materialman's lien. All other defendants in the caption have been dismissed or the action segregated as to them and the results are not involved here.

2. Section 142.1 provides in part:
    No lien arising under the provisions of Sections 141 through 153 of this title which affects property presently occupied as a dwelling by an owner shall be enforceable unless, prior to the first performance of labor or the first furnishing of materials by the lien claimant, the original contractor, subcontractor, laborer, or materialman shall have provided to one of the owners a written notice which shall include substantially the following language....

3. Spec obtained a money judgment against Wes–Star in a separate part of the proceeding.

lative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.,* 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

### ANALYSIS AND REVIEW

¶ 8 Spec argues that: (a) notice under the statute was not required because Giles had notice that Spec was supplying materials by virtue. of his dealings; and (b) Giles did not occupy the property as a dwelling because it was totally destroyed and the reconstruction was a "new" home.

¶ 9 Giles relies primarily upon *C & C Tile and Carpet Co., Inc. v. Aday,* 1985 OK CIV APP 8, 697 P.2d 175. In *C & C Tile,* the owners temporarily vacated their residence out of necessity while the damage was being repaired. Neither the primary contractor nor the materialmen gave the owners the notice required by 42 O.S.1981, § 142.1, that unpaid charges could result in liens being filed against the property. The Court affirmed summary judgment in favor of the owners for contractor's and materialmen's failure to give such notice.

¶ 10 The Court examined the entire lien statute, including its title, applied rules of statutory construction, and concluded that the purpose of the notice provision is "the creation and regulation of the relative rights of landowners and materialmen in their dealings with primary contractors." *C & C Tile,* 1985 OK CIV APP 8 at ¶ 8, 697 P.2d at 177–78. A significant factor in the Court's decision arose from the finding by the Court that the notice "provision does not protect all residential property but rather is concerned only with residential property personally used by the owner." *Id.* at ¶ 12, 697 P.2d at 178. Then the Court ruled that "occupied" included the concept of constructive occupancy so that a temporary absence in order to

facilitate repair was still an occupancy of the residence. *Id.* at ¶ 13, 697 P.2d at 178. The phrase "presently occupied" was construed "to signify current *habitual* use of the property as opposed to a future unacted upon intent." *Id.* at ¶ 14, 697 P.2d at 178. The Court compared "presently occupied" to the Black's Law Dictionary, 1065 (5th ed.1979), definition of "present enjoyment," which is "[t]he immediate or present possession and use of an estate or property, as distinguished from such as is postponed to a future time." *Id.*

¶ 11 Spec argues that *C & C Tile* has been rejected by the Supreme Court's ruling in *Manley v. Brown,* 1999 OK 79, 989 P.2d 448. However, *Manley* does not reject *C & C Tile,* rather *Manley* declined to apply *C & C Tile* to the facts in *Manley. Manley,* 1999 OK 79 at ¶ 15, 989 P.2d at 453.

¶ 12 The dispute in *Manley* began when several subcontractors of homeowner-Bryan's contractor filed mechanic's and materialman's liens against Bryan's home. Bryan then sued Manley and other officers of the contractor because they failed to insure that construction funds were applied to pay lienable claims. Brown and his law firm defended Manley, but Bryan obtained a judgment and successfully defended the judgment on appeal. Manley then sued Brown alleging malpractice premised upon Manley's claim that the subcontractors' lien · claims were defensible because the subcontractors did not give Bryan notice under Section 142.1 and Brown failed to assert that defense.

■ ¶ 13 The precise issue before the *Manley* Court was whether the state of the law concerning notice under Section 142.1 was settled at the time of Brown's representation.[4] The Court held that the law was not settled, thereby distinguishing *C & C Tile,* but without settling the question of what defines a person presently occupying property and, therefore, entitled to notice.[5] Thus,

---

4. A lawyer is not responsible for failing to anticipate how uncertainty in the law will ultimately be resolved. *Manley,* 1999 OK 79 at ¶ 9, 989 P.2d at 452.

5. *Manley* did not settle the matter, stating *"neither today's jurisprudence nor that extant* at the

time of the earlier · state-court litigation defines the standards for gauging the characteristics of an owner who 'presently occupied' the property at the critical time." *Manley,* 1999 OK 79 at ¶ 27, 989 P.2d at 457. Moreover, for purposes of deciding the precise issue before the Court, defining these standards was unnecessary.

all that can be said for *Manley* is that under *its* facts, the owner there was not one entitled to notice.

¶ 14 These facts include a fact relating to "the critical time" mentioned in *Manley*. Bryan had purchased the residence and the contractor's project was to remodel the residence *before Bryan moved into it. Manley*, 1999 OK 79 at ¶ 3, 989 P.2d at 450. Thus, Bryan, unlike Giles here, *had not begun occupancy*. The *Manley* Court recognized this distinction, stating that not every absentee owner qualifies for notice. *Id.* at ¶ 14, 989 P.2d at 453.

¶ 15 The Court then accepted that an owner such as the owner in *C & C Tile* would in fact be presently occupying the property. The Court stated:

Furthermore, the facts in *C & C Tile*, the COCA case, are clearly distinguishable. There, the owners could be said to have been *"presently residing"* on the property before the work came to be commenced. They had temporarily removed themselves from the premises for the duration of repairs. According to the clients' evidentiary material in this case, *the Bryans had not moved into their newly purchased home when the remodeling job started.* They came to occupy the premises *only after* a substantial amount of work had been completed.

*Manley*, 1999 OK 79 at ¶ 15, 989 P.2d at 453–54.

¶ 16 Thus, the Court obviously approved the outcome in *C & C Tile*. However, the Court there did not find that *C & C Tile* settled the question of who qualifies as a presently occupying owner for all fact situations, especially the one before the Court in *C & C Tile*. In support of this conclusion, the Court also noted that *C & C Tile* is to be afforded only persuasive effect. Okla. Sup. Ct. R. 1.200(c)(2), 12 O.S.2001, ch. 15, app. Spec also argues that *C & C Tile* may not be cited as precedent as it was not approved for publication by the Supreme Court. Further, in view of the Court's views quoted above, this Court finds that the discussion about precedent versus persuasion is not a rejec-

tion of *C & C Tile*, but rather additional support for the premise that the law was unsettled, so the lawyer, Brown, would not be held responsible.

¶ 17 At this juncture, the state of the law is that an owner who has never begun occupancy and becomes an occupant after the work or materials that are subjects of the lien have been performed or furnished is not entitled to Section 142.1 notice. On the other side, an owner who occupies the residence, but who is compelled to leave it temporarily, of necessity under circumstances akin to constructive eviction, while substantial damages are being repaired is entitled to Section 142.1 notice.

¶ 18 The facts here relative to "the critical time" of occupancy in no manner parallel the facts in *Manley*. Giles' situation differs from the owner in *C & C Tile* only in that Giles' residence was totally destroyed. However, Giles' absence was equally "temporary" because Giles never intended to leave the property permanently and acted at all times as if the property was his residence and would be occupied but for the fire and storm damage. Moreover, neither *Manley* nor *C & C Tile* make the interpretation of "occupied" and "presently occupied" depend upon the degree of damage done to the residence or the amount of work to be done.[6]

¶ 19 Consequently, even though *C & C Tile* may not be precedent, it is persuasive. The reasoning given there to hold that the owner was entitled to notice applies equally here.

¶ 20 Thus, this Court by this Opinion does not now define "the standards for gauging the characteristics of an owner who 'presently occupied' the property at the critical time." This Court does, however, hold that *C & C Tile* is persuasive and that its reasoning will be applied here to hold that Giles was entitled to notice under Section 142.1.

¶ 21 Spec, however, argues that Giles had knowledge independently of the notice and such knowledge dispenses with or substitutes for the Section 142.1 notice. In that regard, *Manley* does not settle this issue either for two reasons. First, for purposes

---

6. *Manley* involved a remodeling contract.

of lawyer malpractice, it was enough to say that the lien notice issue was unsettled. Second, the facts showing the nature and extent of notice were not in the record. Therefore, the Court relegated the discussion to a footnote. *Manley*, 1999 OK 79, n. 25, 989 P.2d 448.[7]

¶ 22 The issue is whether Giles had the type of notice that the statute provides. Giles clearly knew that Spec was to supply the roofing materials and windows. Mr. and Mrs. Giles had contacted Spec because they wanted a special roof and Spec was the local source for the roof. They received information from Spec and Spec representatives answered questions for them. The Giles told their contractor that the roofing materials were available from Spec and specified the roofing type in their contract. They were aware that the roofing and window materials were delivered by Spec to the property. During construction they had dealings with Spec concerning installation and changes.

¶ 23 In addition, Mr. Giles testified that, prior to this lawsuit, he was not aware that a supplier such as Spec could file a lien against his home. He had never read the lien statutes and knew nothing of the particulars of Oklahoma mechanic's and materialman's lien laws.[8]

¶ 24 Section 142.1 goes beyond knowledge that a supplier or subcontractor has contact with a project.[9] Section 142.1 is a prerequisite to enforcement of a lien and gives the property owners the "benefit of a specific pre-enforcement notice of potential materialmen's liens as part of their rights." *C & C Tile*, 1985 OK CIV APP 8 at ¶ 9, 697 P.2d at 178. The Court in *Sanders v. Bingham*, 1994 OK CIV APP 74, ¶ 9, 877 P.2d 627, 629 added:

> The statutory notice, however, provides much more than the right to the identities of laborers and materialmen. It summarizes the rights of laborers and materialmen to file liens and the consequences of lien foreclosure when lien holders are not paid. It also summarizes the property owner's rights such as to demand lien

7. The footnote reads:

An owner *with* knowledge, but *without* formal (§ 142.1) notice, might be induced to waive statutory notice for fear that if he did not prevail on lack of a statutory-notice theory, the price of defeat would be liability for a sizeable counsel-fee award. The record here does not inform us of the quantum of knowledge the owner had, at the critical time, about the identity and activities of the subcontractors at the job site. The statutory notice scheme appears to bind a person by "constructive notice" of matters that should have come to one's attention. The pertinent provisions are found in 25 O.S.1991 §§ 10, 11, 12, 13. "Notice is either actual or constructive." § 10. "Actual notice consists in express information of a fact." § 11. "Constructive notice is notice imputed by the law to a person not having actual notice." § 12. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." § 13.

*For the past application of these provisions in different contexts, see Bushert v. Hughes,* 1996 OK 21, 912 P.2d 334, 343 n. 2; *Matter of Estate of Pope,* 1990 OK 125, 808 P.2d 640, 646 n. 32; *Sandpiper [North Apts. v. American Nat'l Bank & Trust Co. of Shawnee], supra* note 19 [1984 OK 13, 680 P.2d 983] at 990 n. 16.

8. Transcript, pp. 62–64.

9. The Section 142.1 notice must be in writing and substantially conform to the statutory form which provides:

NOTICE TO OWNER

YOU ARE HEREBY NOTIFIED THAT ANY PERSON PERFORMING LABOR ON YOUR PROPERTY OR FURNISHING MATERIALS FOR THE CONSTRUCTION, REPAIR, OR IMPROVEMENT OF YOUR PROPERTY WILL BE ENTITLED TO A LIEN AGAINST YOUR PROPERTY IF HE IS NOT PAID IN FULL, EVEN THOUGH YOU MAY HAVE PAID THE FULL CONTRACT PRICE TO YOUR CONTRACTOR. THIS COULD RESULT IN YOUR PAYING FOR LABOR AND MATERIALS TWICE. THIS LIEN CAN BE ENFORCED BY THE SALE OF YOUR PROPERTY. TO AVOID THIS RESULT, YOU MAY DEMAND FROM YOUR CONTRACTOR LIEN WAIVERS FROM ALL PERSONS PERFORMING LABOR OR FURNISHING MATERIALS FOR THE WORK ON YOUR PROPERTY. YOU MAY WITHHOLD PAYMENT TO THE CONTRACTOR IN THE AMOUNT OF ANY UNPAID CLAIMS FOR LABOR OR MATERIALS. YOU ALSO HAVE THE RIGHT TO DEMAND FROM YOUR CONTRACTOR A COMPLETE LIST OF ALL LABORERS AND MATERIAL SUPPLIERS UNDER YOUR CONTRACT, AND THE RIGHT TO DETERMINE FROM THEM IF THEY HAVE BEEN PAID FOR LABOR PERFORMED AND MATERIALS FURNISHED.

waivers, withhold payment, and to obtain a list of all laborers and materialmen. The purposes of this statutory notice are not met simply because a contractor has contracted directly with the property owners and the property owner thus knows his identity and the work to be performed. The statutory notice requires much more information be given.

¶ 25 The uncontroverted evidence here shows that none of the rights summarized in the statute were made known to Giles nor did he have such knowledge independently or as a result of his contacts with Spec. Spec takes the position that it did not have to tell Giles anything, so no pertinent information emanated from that source. It must always be remembered that the function of notice is to provide knowledge and information and to alert the notice recipient that something will or may happen to affect the recipient's rights so that the notice recipient may then take steps to protect those rights. Under the evidence, Giles did not have the actual or constructive notice contemplated and required by Section 142.1.

¶ 26 The trial court correctly concluded that the lien was invalid and the trial court's decision is affirmed.

¶ 27 AFFIRMED.

REIF, P.J., and TAYLOR, J. (sitting by designation), concur.