1999 OK 79

Jim D. MANLEY and John L. Houchin,
Plaintiffs/Appellants,

v.

Jack L. BROWN, an Individual, Frank R.
Patton, Jr., an individual, Patton,
Brown, an Oklahoma Partnership or
Joint Venture, and Patton, Brown, an
Oklahoma Professional Corporation,
Defendants/Appellees.

No. 89,379.

Supreme Court of Oklahoma.

Sept. 28, 1999.

Donald M. Bingham, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Tulsa, Oklahoma for appellants.

Joseph R. Farris, Paula J. Quillin, Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma for appellees.[1]

OPALA, J.

¶ 1 The dispositive issue tendered on certiorari in this legal malpractice case is whether summary judgment for the defendants was erroneously entered. We answer in the negative and reinstate the trial court's judgment.

1. Identified herein are only those counsel for the parties *whose names appear on the certiorari briefs.*

2. *Kirby v. Bryan,* No. 72,926, (April 21, 1991)(unpublished memorandum opinion in subcontractor's lien foreclosure suit against the owner).

I

## THE ANATOMY OF LITIGATION

¶ 2 This is an appeal from summary judgment in an action brought by former clients, Jim D. Manley and John L. Houchin [Manley and Houchin or former clients], against Jack L. Brown, his law associate Frank Patton, Jr., as well as their law firm [collectively called Brown]. The dispute between the former clients and Brown stems from his allegedly substandard performance (a) in defending the clients in a 1986 lawsuit that resulted in judgment on a jury verdict for the plaintiffs and (b) in prosecuting an unsuccessful appeal from that adverse judgment. The Court of Civil Appeals reversed summary judgment for Brown and remanded the cause for further proceedings.

### The Antecedent 1986 State Litigation

¶ 3 In September 1985 John and Deborah Bryan [*Bryans* or collectively called *owner*] entered into a $119,325 contract with Watkins Construction Company [Watkins or general contractor] for extensive remodeling of a recently purchased Tulsa home. Watkins subcontracted some of the work. The remodeling *was to be completed before the owner moved in.* Watkins, who ceased doing business the following year after being paid by the Bryans over $106,000 for completed work, did not pay in full several of the subcontractors on the project.

¶ 4 The subcontractors filed liens against the Bryans' home for a total amount in excess of $44,000. The owner paid several of the subcontractors directly, posted bonds to discharge some liens and successfully defended a lien foreclosure action by one of the subcontractors.[2] In November 1986 the Bryans sued Watkins as well as Manley and Houchin (*qua* managing officers of the general contractor) for allegedly misapplying project-derived funds that should have been placed in trust for payment of *lienable claims* for supplies delivered or services rendered in connection with the remodeling job.[3]

3. According to the amended pre-trial conference order, the Bryans pressed as grounds for recovery (a) defalcation of trust funds under 42 O.S. 1991 §§ 152–153; (b) breach of trust; (c) breach of contract for defective and incomplete work and (d) the contractor's willful, malicious and

A jury awarded the owner $36,620.00 in actual damages, $76,631.00 in punitive damages, and $54,148.50 in attorney's fee. The former clients then brought an appeal from the nisi prius judgment on jury verdict. The Court of Civil Appeals [COCA] affirmed.[4]

¶ 5 Brown defended Watkins, Manley and Houchin in the antecedent action. He also brought their appeal from the adverse nisi prius disposition. After COCA's pronouncement, another law firm was hired to represent the former clients at the rehearing and certiorari stages. Petitions for rehearing and certiorari were denied.

### The Professional Negligence Action

¶ 6 The former clients brought this legal malpractice action. The pivot of their claim is Brown's alleged failure to take full advantage of a fatal infirmity in subcontractors' liens because of the latter's failure to give the

owner that notice which is mandated by the provisions of 42 O.S.1991 § 142.1.[5] The cited statute requires that before commencement of work (or provision of supplies) written notice must be given to the owner who "*presently occupies*" the property. According to settled law at the time of trial, the former clients argue, a subcontractor who fails to give an owner written notice in substantial compliance with the terms of § 142.1 has no *valid lienable claim* against the property. The clients contend that had Brown asserted a defense based on the liens' fatal infirmity for lack of notice (and raised it on appeal) they would have been exonerated of liability for that part of the total obligation, there in suit, which was owed to the subcontractors. Because that point of law affords an *absolute* (liability-defeating) defense, the clients urge, Brown committed professional malpractice in failing to raise it in the antecedent action.

reckless indifference to the owner's rights. The order lists the following defenses and setoffs: (1) setoff for the amounts due Watkins from Bryans under the remodeling contract and for the extras to the contract; (2) the Bryans suffered no net damages because the amount of the setoffs exceeds the amount of loss; (3) §§ 152–153 contemplate *full payment* of the remodeling contract and are therefore inapplicable to this case; (4) Watkins did not breach *any duty* imposed on it by § 152; and (5) at no time material to this action were Manley and Houchin managing officers of Watkins.

The pertinent provisions of 42 O.S.1991 § 152 are:

(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, *be held as trust funds* for the payment of·all *lienable claims* due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract. (emphasis supplied).

The pertinent provisions of 42 O.S.1991 § 153 are:

(3) If the party receiving any money under Section 152 of this title shall be a corporation, such corporation and its *managing officers* shall be liable for the proper application of such trust funds.... (emphasis supplied).

4. *Bryan v. Manley*, No. 75,413 (Feb. 18, 1992) (unpublished Court of Civil Appeals' memorandum opinion).

5. The terms of 42 O.S.1991 § 142.1 provide:
No lien arising under the provisions of Sections 141 through 153 of this title which affects

property *presently occupied* as a dwelling by an owner shall be enforceable unless, *prior to the first performance of labor* or the *first furnishing of materials* by the lien claimant, the original contractor, subcontractor, laborer, or materialman shall have provided to one of the owners a written notice which shall include substantially the following language:
NOTICE TO OWNER
YOU ARE HEREBY NOTIFIED THAT ANY PERSON PERFORMING LABOR ON YOUR PROPERTY OR FURNISHING MATERIALS FOR THE CONSTRUCTION, REPAIR, OR IMPROVEMENT OF YOUR PROPERTY WILL BE ENTITLED TO A LIEN AGAINST YOUR PROPERTY IF HE IS NOT PAID IN FULL, EVEN THOUGH YOU MAY HAVE PAID THE FULL CONTRACT PRICE TO YOUR CONTRACTOR. THIS COULD RESULT IN YOUR PAYING FOR LABOR AND MATERIALS TWICE. THIS LIEN CAN BE ENFORCED BY THE SALE OF YOUR PROPERTY. TO AVOID THIS RESULT, YOU MAY DEMAND FROM YOUR CONTRACTOR LIEN WAIVERS FROM ALL PERSONS PERFORMING LABOR OR FURNISHING MATERIALS FOR THE WORK ON YOUR PROPERTY. YOU MAY WITHHOLD PAYMENT TO THE CONTRACTOR IN THE AMOUNT OF ANY UNPAID CLAIMS FOR LABOR OR MATERIALS. YOU ALSO HAVE THE RIGHT TO DEMAND FROM YOUR CONTRACTOR A COMPLETE LIST OF ALL LABORERS AND MATERIAL SUPPLIERS UNDER YOUR CONTRACT, AND THE RIGHT TO DETERMINE FROM THEM IF THEY HAVE BEEN PAID FOR LABOR PERFORMED AND MATERIALS FURNISHED.
(emphasis supplied).

¶ 7 The trial court gave summary judgment to Brown. The Court of Civil Appeals [COCA] reversed and remanded the cause for further proceedings. According to COCA, (a) *the law was settled* that a plaintiff in an action for breach of the construction trust fund statutes would have to prove, as an element of recovery, *prior statute-mandated notice* and *subsequent timely perfection of lienable claims* and (b) Brown's failure to assert a *valid-lienable-claims* impediment raises a permissible inference of professional negligence.

## II

### THE PARAMETERS OF LIABILITY IMPOSED BY *COLLINS* v. *WANNER* [6]

■ ¶ 8 Before us is a two-prong breach-of-duty claim targeting (a) Brown's failure to assert want of notice *at trial* as well as (b) his failure to press that issue *on appeal.* Clients' negligence action is governed by the *Collins v. Wanner* [7] standard of professional care. The plaintiff in a legal negligence action must prove (1) the existence of an attorney-client relationship, (2) *breach of a lawyer's duty to the client,* (3) facts constituting the alleged negligence, (4) a causal nexus between the lawyer's negligence and the resulting injury (or damage) and (5) *but for the lawyer's conduct, the client would have succeeded in the action.* [8]

■ ¶ 9 In a negligence case for rendition of substandard legal service, the primary issue is whether a lawyer's conduct of litigation-related defense fell below the acceptable professional standards. A lawyer who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment when dealing with a point of law *which has not been settled by a precedent-setting pronouncement* [9] and about which reasonable doubt may be entertained by well-informed lawyers.[10] *When the state of the law is doubtful or debatable, a lawyer will not be held responsible for failing to anticipate how the uncertainty will ultimately be resolved.* [11]

¶ 10 We look in this cause *not to* whether Brown's defense service in the antecedent case was at an optimum *nor to* whether the litigation might have resulted in a more favorable outcome had his strategy choices been different. Our task is rather to search the summary-process record for the presence of triable facts that would support the clients' claim of professional negligence.

## III

### THE UNSETTLED STATE OF PRECEDENTIAL § 142.1 JURISPRUDENCE AT THE CRITICAL COMMENCEMENT-OF-CONSTRUCTION STAGE GAVE NO MEANINGFUL GUIDANCE ON WHO IS "PRESENTLY OCCUPYING" PREMISES AS OWNER WITHIN THE MEANING OF THE § 142.1 NOTICE REQUIREMENT AND ON THE LEGAL IMPACT LACK OF STATUTE-MANDATED NOTICE WOULD HAVE ON THE OWNER'S RIGHTS AGAINST THE CONTRACTOR

¶ 11 The law in force at the *critical time* of the work's commencement—the furnishing of labor or materials—was far from settled as

**6.** 1963 OK 127, 382 P.2d 105, 109.

**7.** *Collins,* supra note 6 at 108–09.

**8.** *See Allred v. Rabon,* 1977 OK 216, 572 P.2d 979, 981.

**9.** A precedent-setting opinion is one that meets the criteria of 20 O.S.1991 § 30.5:
... No opinion of the Court of Civil Appeals shall be binding or cited as precedent unless it shall have been approved by the majority of the justices of the Supreme Court for publication in the official reporter....

*See also* Rule 1.200(c)(2), Oklahoma Supreme Court Rules, 12 O.S.Supp.1997, Ch. 15, App. 1.; *McDaneld v. Lynn Hickey Dodge, Inc.,* 1999 OK 30, ¶ 3, 979 P.2d 252, 254 n. 3.

**10.** *Post Oak Oil Company v. Stack & Barnes,* 1996 OK 23, 913 P.2d 1311, 1313–14; *Collins, supra* note 6 at 109; *see also Wabaunsee v. Harris,* 1980 OK 52, 610 P.2d 782, 784; *Allred, supra* note 8 at 981.

**11.** *Collins, supra* note 6 at 109.

to (a) the nature of possession necessary to support the owner's claim to a § 142.1 notice and (b) the legal impact want of statute-mandated notice would have on contractor's liability to the owner.

## A.

### The Unsettled Nature Of "Occupancy" Which Entitles An Owner To Notice At The Commencement Stage Of Construction

¶ 12 According to the former clients the law stood firmly settled that an owner's "constructive occupancy" of a dwelling is sufficient to make notice mandatory under § 142.1. They direct us to a COCA decision in *C & C Tile & Carpet Co. v. Aday*,[12] where the court pronounced the "constructive occupancy" doctrine. Giving the cited statute a liberal construction, COCA held that where *"residing owners"* temporarily vacate a residential dwelling during the course of repairs and return upon the work's completion, for application of the § 142.1 notice the property is deemed "presently occupied".[13]

■ ¶ 13 The invoked COCA opinion does not settle by a *binding precedential pronouncement*[14] the *characteristics of possession* an owner must meet to qualify for mandatory notice under § 142.1 as one who *"presently occupied"* the property (at the critical time of the work's *commencement*). *Extant precedent-setting* § 142.1 *jurisprudence neither did then nor does now settle* (a) who is to be deemed an *owner in occupancy* at the critical time, (b) whether and

when constructive occupancy will satisfy the "present occupancy" requirement, and (c) whether an *absentee owner who has never taken possession* of the purchased premises may be regarded as having constructive occupancy. When the meaning of a statute is unsettled, the lawyer is left adrift and hence utterly free to select what will appear to be the best strategy choices under the circumstances.[15]

¶ 14 Moreover, while at first blush COCA's construction of the statute appears favorable to the former clients' position, on closer examination it is fraught with weaknesses. If COCA's view of *constructive occupancy* is indeed correct, *every record owner* would be entitled to the § 142.1 notice. This is so because by Oklahoma's common law *everyone* in that class of owners stands in *constructive possession* of the premises.[16] COCA's construction could not be viewed as free from doubt. The legislature would doubtless not have used, in § 142.1, the words "presently occupied" if it had intended that statutorily mandated notice be *every absentee record owner's due.*

¶ 15 Furthermore, the facts in *C & C Tile*, the COCA case, are clearly distinguishable. There, the owners could be said to have been *"presently residing"* on the property before the work came to be commenced. They had temporarily removed themselves from the premises for the duration of repairs. According to the clients' evidentiary material in this case, *the Bryans had not moved into their newly purchased home when the remodeling job started.* They came to occupy

---

**12.** 1985 OK CIV APP 8, 697 P.2d 175.

**13.** According to COCA, "present occupancy" within the meaning of § 142.1 is not limited to actual physical presence in the home, but may extend to a temporary absence from the dwelling while it is undergoing repairs. *C & C Tile, supra* note 12 at 178. There, the owners had temporarily vacated the house after it was partially destroyed by fire. They took residence in an apartment until the work was substantially completed.

**14.** The cited COCA opinion *(C & C Tile, supra* note 12), while persuasive, lacks precedential value. See 20 O.S.1991 § 30.5, supra note 9; Rule 1.200(c)(2), supra note 9; *see also McDaneld, supra* note 9 at 254 n. 3.

**15.** *Collins, supra* note 6 at 109.

**16.** *Collins v. Smith*, 1962 OK 128, 372 P.2d 878, 880 ("The constructive possession, in the absence of actual possession, follows the valid title"). Because "occupancy" is used in 60 O.S.1991 § 331 as a synonym for "possession", it must be given the same meaning as that which is accorded possession by the common law.

The terms of § 331 are:
Property is acquired by:
1. Occupancy.
2. Accession.
3. Transfer.
4. Will; or,
5. Succession.

the premises *only after* a substantial amount of work had been completed.

## B.

***Also Unsettled By Precedential Jurisprudence Is The Legal Impact Of Failure To Give Statute–Mandated Notice To One Whose Occupancy Meets the § 142.1 Characteristics***

¶ 16 According to the former clients, they could have been protected from substantial liability had Brown urged, in the antecedent action, that the subcontractors had *no valid lienable claims* because they had failed to give the Bryans *pre-commencement notice* required by 42 O.S.1991 § 142.1.[17] For the notion that the law was settled at the critical time, they rely on three Oklahoma cases. These cases—*In re Tefertiller,*[18] *Sandpiper North Apts. v. American Nat'l Bank & Trust Co. of Shawnee,*[19] and *Bohn v. Divine*[20]—are urged as having allowed a valid-lienable-claims defense.

¶ 17 The Bryans' *entitlement to statute-mandated notice* must stand or fall upon their status as owners "presently occupying" the dwelling. Even if we assumed that the issue here in contest stood settled by precedential jurisprudence and that constructive occupancy of a dwelling does entitle *every record owner* to the statute-mandated notice, the cases tendered are not authority for the view that want of § 142.1 notice is always available as a liability-defeating defense. *All of the cited cases are factually dissimilar.* They deal solely with disputes between contractors and subcontractors. *None addresses itself to the perfection of a lien affected by the terms of § 142.1 in the context of a general contractor's liability to the owner.*

¶ 18 In *Sandpiper North Apts.*[21] a contractor sued a subcontractor's lender bank. The latter was held liable for misappropriated funds as an involuntary trustee under the construction trust fund statutes. The court noted a lien claimant must show that valid lienable claims remain unsatisfied and trust funds are insufficient to pay them.[22] *Tefertiller*[23] teaches that a subcontractor is required to perfect a mechanics' and materialman's lien in order to create a valid lienable claim and then invoke liability under the construction trust fund statutes. The vitality of a subcontractor's lien depends upon compliance with the lien statutes and not upon the receipt of construction trust funds by the contractor.[24] Failure to perfect a lien relegates a subcontractor to the status of an unsecured creditor *vis-a-vis* the trust fund. Moreover, *Tefertiller* is further distinguishable because the subcontractor's lien, there in suit, was untimely and hence *facially unenforceable.* Here, the dispute is not over the timeliness of the lien, but over the validity of a subcontractor's lien *sans* statutory notice, an issue raised and litigated in the case. *Bohn,* cited in *Tefertiller,* similarly holds that a subcontractor must timely perfect a lien in order to assert a lienable claim against construction trust funds.

¶ 19 These three cases demonstrate that a subcontractor must take the affirmative steps required by the construction trust fund statutes in order to perfect a claim against a contractor for misapplied trust funds. They *do not teach* that the merits of an *owner's claim against its contractor* depend on a *subcontractor's* compliance with the notice requirements of the lien statute. Whether a *subcontractor* must give the § 142.1 notice (when it is due) for an *owner* to recover against its *contractor* who is alleged to have misapplied construction trust funds is a question unanswered by case law extant at the critical time here—*i.e., before* commencement of work or provision of supplies at the job site. In sum, even if notice was the owner's due, the legal impact of a

---

17. For the pertinent provisions of section 142.1 see *supra* note 5.

18. 1989 OK 60, 772 P.2d 396.

19. 1984 OK 13, 680 P.2d 983.

20. 1975 OK CIV APP 70, 544 P.2d 916.

21. *Sandpiper, supra* note 19 at 991.

22. *Id.* at 992.

23. *Tefertiller, supra* note 18 at 399.

24. *Id.*

subcontractor's failure to give that notice upon a contractor's liability to the owner *was then* (and is now) *far from clearly settled.*

## C.

### *Other Unsettled Critical Questions That Bear On Subcontractors' Lien Validity*

¶ 20 There are other unsettled critical questions that bear on enforceability of the subcontractors' lien: (1) whether owner's *actual knowledge* would have met statutory requirements and hence dispensed with the necessity of giving a § 142.1 notice; (2) whether lack of statutory notice prejudiced the owner who may have had actual knowledge and (3) whether an owner with actual knowledge is deemed to have waived statutory notice.[25]

¶ 21 *None of these questions needs to be settled here. It suffices to say that all stood*

unanswered and were unanswerable when Brown conducted the defense.

## IV

## THE LEGAL SUFFICIENCY OF THE SUMMARY–PROCESS RECORD TO SUPPORT THE NISI PRIUS JUDGMENT IS TO BE GAUGED BY THE *COLLINS'* [26] PARAMETERS

¶ 22 Summary process—a special pretrial procedural track to be followed with the aid of acceptable probative substitutes[27] —is a search for undisputed material facts that, *sans* forensic combat, may be applied in the judicial decision-making process.[28] Only those evidentiary materials which eliminate from trial some or all fact issues may afford legitimate support for nisi prius resort to summary process.[29] *Summary relief issues stand before us for de novo examination.*[30] All facts and inferences must be viewed in the light most favorable to the non-movant.[31]

---

**25.** An owner *with* knowledge, but *without* formal (§ 142.1) notice, might be induced to waive statutory notice for fear that if he did not prevail on lack of a statutory-notice theory, the price of defeat would be liability for a sizeable counsel-fee award. The record here does not inform us of the quantum of knowledge the owner had, at the critical time, about the identity and activities of the subcontractors at the job site. The statutory notice scheme appears to bind a person by "constructive notice" of matters that should have come to one's attention. The pertinent provisions are found in 25 O.S.1991 §§ 10, 11, 12, 13. "Notice is either actual or constructive." § 10. "Actual notice consists in express information of a fact." § 11. "Constructive notice is notice imputed by the law to a person not having actual notice." § 12. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." § 13. *For the past application of these provisions in different contexts, see Bushert v. Hughes,* 1996 OK 21, 912 P.2d 334, 343 n. 2; *Matter of Estate of Pope,* 1990 OK 125, 808 P.2d 640, 646 n. 32; *Sandpiper, supra* note 19 at 990 n. 16.

**26.** *Collins, supra* note 6 at 109.

**27.** "'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Gray v. Holman,* 1995 OK 118, 909 P.2d 776, 781 n. 16 (quoting from *Seitsinger v. Dockum Pontiac Inc.,*

1995 OK 29, 894 P.2d 1077, 1080–81); *Davis v. Leitner,* 1989 OK 146, 782 P.2d 924, 926–927.

**28.** The focus in summary process is not on the facts which might be proven at trial (*i.e.,* the legal sufficiency of evidence that could be adduced), but rather on whether the tendered proof in the record reveals *only undisputed material facts supporting but a single inference that favors the movant's quest for relief. Hulsey v. Mid-America Preferred Ins. Co.,* 1989 OK 107, 777 P.2d 932, 936 n. 15.

**29.** *Russell v. Bd. of County Comm'rs,* 1997 OK 80, ¶ 7, 952 P.2d 492, 496–497; *Gray v. Holman,* 1995 OK 118, ¶ 11, 909 P.2d 776, 781. In reviewing any summary adjudication the court may consider, in addition to the pleadings, such items as depositions, affidavits, admissions, answers to interrogatories, as well as other evidentiary material offered by the parties, which are in an acceptable form. *Hargrave v. Canadian Valley Elec. Coop., Inc.,* 1990 OK 43, 792 P.2d 50, 55.

**30.** *Brown v. Nicholson,* 1997 OK 32, 935 P.2d 319, 321 n. 1. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is hence reviewable by a *de novo* standard. An appellate court claims for itself plenary, independent and non-deferential authority *to re-examine a trial court's legal rulings. Kluver v. Weatherford Hospital Auth.,* 1993 OK 85, 859 P.2d 1081, 1084.

**31.** *Carmichael v. Beller,* 1996 OK 48, 914 P.2d 1051, 1053.

Just as nisi prius courts stand enjoined to do, so too appellate tribunals must equally bear an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant.[32] Only if the court should conclude that there is *no* substantial controversy over any material fact and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor.[33]

## A.

### The Record Falls Short of Providing Evidentiary Material That Demonstrates Brown's Substandard Nisi Prius Conduct Of His Client's Defense Against The Liability That Was Sought To Be Imposed

■ ¶ 23 Brown's substandard performance rests on his alleged failure to attack the owner's claim as based on a nonlienable liability to the subcontractors.[34] Nonlienability rests solely on the clients' notion that (a) the § 142.1 notice was the owner's due and (b) absent that notice neither the lien was enforceable against the owner nor the trust fund liable for the unpaid labor or supplies.

¶ 24 To prevail as the summary-judgment movant, Brown had the initial burden of showing (by his evidentiary material) want of at least *one material element* of the former clients' negligence claim.[35] He clearly met this burden by demonstrating that, although the law on whether notice was in fact the owner's due was then unsettled, *he had unsuccessfully pressed the want-of-notice defense* in a pretrial motion at nisi prius.[36]

¶ 25 Once Brown had met his burden, the onus then shifted to the former clients to show by their responsive material that (a) the owner met the statutory prerequisites for mandatory notice at the commencement of work and provision of supplies, (b) the subcontractors' liens were tainted with a fatal infirmity for lack of § 142.1 notice to the owner, (c) Brown's motion for a pretrial ruling was inefficacious as a defense, and (d) Brown's failure more vigorously to press at nisi prius a want-of-notice defense constituted substandard professional conduct.

### The Sufficiency of the Summary–Process Record

¶ 26 The summary-process record is totally devoid of probative documents that disclose *all the critical facts* surrounding the nature of the owner's "present occupancy" of the

**32.** *Spirgis v. Circle K Stores, Inc.,* 1987 OK CIV APP 45, 743 P.2d 682, 684–85 (approved for publication by the Supreme Court).

**33.** *Hargrave, supra* note 29 at 55. The function of summary process is not to set the stage for trial by affidavit, but to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain. *Russell, supra* note 29 at 503; *Bowers v. Wimberly,* 1997 OK 24, 933 P.2d 312, 316; *Stuckey v. Young Explor. Co.,* 1978 OK 128, 586 P.2d 726, 730.

**34.** Clients argued that Brown's pretrial motion (*infra* note 36 ) was not enough. Because want-of-notice argument was a liability-defeating defense, they argue that Brown should have sought dismissal of the action or pressed for summary adjudication. They characterize as *fatuous* Brown's concerns about exposing himself and his clients to liability for sanctions by re-pressing his argument after it had been rejected at the pretrial stage. Clients point out that this defense was asserted on their behalf by other counsel (a) in Manley's bankruptcy case (App.B, ex.22); (b) on rehearing before the Court of Civil Appeals in the 1986 antecedent action (App.B, ex.23); (c) in

Manley's appeal from the bankruptcy court order (App.B, ex.9). *The defense alleged to have been neglected by Brown did not succeed when it was interposed in all the other instances clients have called to our attention.*

**35.** See *Akin v. Missouri Pacific R. Co.,* 1998 OK 102, ¶ 9, 977 P.2d 1040, 1044; *Runyon v. Reid,* 1973 OK 25, ¶ 12, 510 P.2d 943, 946. *Accord, Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex. 1993).

**36.** Brown's evidentiary material (17 April 89 pretrial order, App. A, ex.B) shows that the trial court denied Watkins' 6 Feb 89 request (App.B, ex. 1) for a ruling on the enforceability of subcontractors' liens based on the owner's constructive occupancy of the dwelling. Brown's motion in behalf of Watkins asserts in pertinent part:

"Where owners of a home engage in substantial remodeling thereof *prior to actual occupancy thereof*, any lien claim arising from such remodeling will be unenforceable against the home unless the owners had been provided the notice set forth in 42 O.S. § 142.1"
(emphasis supplied).

dwelling—i.e., material facts necessary for judicial determination that, at the critical time (before the commencement of work or the provision of supplies by each subcontractor) *the owner's possession* was such that it entitled him to a § 142.1 [37] notice.[38]

### The Unsettled State of the Law

■■■ ¶ 27 Even if the needed material facts (a) were before us, (b) stood undisputed, and (c) supported solely that kind of possession which meets the strategy choice clients would have interposed, there would still be doubt whether the owner qualified for a § 142.1 notice. This is so because *neither today's jurisprudence nor that extant* at the time of the earlier state-court litigation defines the standards for gauging the characteristics of an owner who *"presently occupied"* the property at the critical time.[39] Neither was it settled that failure to give notice to one whose occupancy meets the § 142.1 characteristics would have detrimental consequences on the liability litigated in the earlier suit.[40] Professional negligence must be based on the *state of the law* at the time counsel made the choices.[41] Since the clouded state of the law affords a broad range of possible alternative solutions (other than the "liability-defeating defense" pressed for by the malpractice plaintiffs), we cannot conclude that had Brown pursued the strategy choices which the clients urge today, their lawsuit's outcome would have been more favorable.

¶ 28 In sum, clients' evidentiary material fails to support the notion that Brown's nisi prius strategy choices amount to substandard professional conduct in the defense of his clients. After its earlier rejection at nisi prius, Brown had no duty to re-urge his defensive argument. The issue he allegedly failed to re-press had not been clearly resolved by precedential jurisprudence. The unsettled nature of caselaw, *both then and now*, makes the clients' claim deficient when it is measured by the due-care standards of *Collins*.[42]

### B.

### The Malpractice Plaintiffs' Probative Reliance To Establish Brown's Substandard Advocacy On Appeal

■■■ ¶ 29 The former clients argue that Brown failed, as their counsel on appeal, to raise error in the trial court's denial of a valid-lienable-claims defense.

### The Sufficiency of the Summary–Process Record

■■■ ¶ 30 There is no paper trail in this record to support Brown's lack of professional performance on appeal. The former clients had the burden to support with evidentiary material their bare allegation of Brown's substandard defense conduct. There is a total absence of responsive material to show what Brown raised and argued as reversible error.[43] Without this critical probative material, there is nothing to support the allegation of Brown's breach of due care as an appellate advocate. Review in this case is confined strictly to the content of the nisi prius summary-process record. Judicial notice will not be taken of any document the trial judge did not have before her when she considered the case for summary relief.[44]

---

**37.** For the pertinent terms of 42 O.S.1991 § 142.1, see *supra* note 5.

**38.** For deficiencies in the former clients' responsive materials, see discussion in Appendix B.

**39.** *See* discussion in Part III(A) *supra*.

**40.** *See* discussion in Part III(B) *supra*.

**41.** *Collins, supra* note 6 at 109.

**42.** For the teachings of *Collins* (*supra* note 6), see Part II *supra*.

**43.** The former clients' responsive material includes but one item that addresses itself to the appeal from the judgment on jury verdict in the antecedent action—their petition for rehearing of the Court of Civil Appeals' opinion. (App.B, ex. 23).

**44.** On review of summary judgment, this court may not take notice of anything the trial judge did not consider. It cannot hence rely on any fact or evidentiary material that was not before the trial court at the time of summary adjudication. The ruling on a motion for summary judgment must be rested on the record which is then before the court rather than on one that could have been assembled. *Frey v. Independence Fire and Cas. Co.*, 1985 OK 25, 698 P.2d 17, 20. *Timmons v. Royal Globe Ins. Co.*, 1985 OK 76,

Judicial notice cannot hence be taken of the appellate briefs or of the unpublished COCA opinion in the earlier litigation.[45]

### The Unsettled State Of The Law

¶ 31 The very same standards that prevent Brown's trial defense conduct from being condemned as substandard by the use of our hindsight also apply to his appellate advocacy. Because we hold today that Brown's nisi prius defense was not shown to be in breach of due care, he cannot be declared negligent in having failed to press on appeal arguments that lie in an arena of unsettled law or in making substandard strategy choices. *Failure repeatedly to advocate a questionable theory of defense rejected earlier at nisi prius does not constitute a lawyer's breach of due care.*

¶ 32 Moreover, the last element of a professional negligence claim requires the clients to show that except for Brown's substandard performance they would have been victorious on appeal. In light of unsettled jurisprudence and the questionable soundness of extending the § 142.1 notice requirements *to all those* who may be deemed in constructive possession of land as well as *to all those* with actual knowledge of essential facts, we cannot say that had Brown pursued, in the course of appellate review, the very strategy choices clients press as a sure path to victory, the lawsuit would have ended more favorably to the former clients.

¶ 33 In sum, there is no evidentiary material to support the notion that Brown's pro-fessional performance, either at nisi prius or on appeal, was at a level that falls short of the due care standards established by *Collins.*[46]

## V

## SUMMARY

¶ 34 The pivotal element of the former clients' professional negligence claim is Brown's failure to take full legal advantage of the subcontractors' failure to give the owner a statute-mandated notice (before the commencement of labor or provision of supplies). The law in force at the critical time in question was far from settled with respect to (a) the nature of possession the owner must hold to be entitled to a § 142.1 notice and (b) the legal consequence of subcontractor's *failure to give statute-mandated notice* upon the contractor's liability to the owner. Even if the law had been settled in the clients' favor, the summary-process record falls short of providing evidentiary material to demonstrate Brown's substandard nisi prius conduct of his client's defense against the liability sought to be imposed.

¶ 35 When the law is clouded because it stands unconcretized by precedential pronouncements, a lawyer who acts in good faith and in an honest belief that his advice and acts are well founded will not be held responsible for failing to anticipate how the law's ambiguity will ultimately be resolved. When measured by the parameters of *Collins*[47] and in light of the unsettled caselaw,

---

713 P.2d 589, 592 n. 8 (where this court took notice of its own record even though there was nothing in the record of the case) *is factually distinguishable.* That case dealt with a post-judgment controversy about the meaning of a judgment that had been reviewed on appeal. In this case the controversy is about extra-record facts that are not shown to have been presented at nisi prius.

45. An appellate court cannot take judicial notice of records in other courts. *Salazar v. City of Oklahoma City*, 1999 OK 20, 976 P.2d 1056, 1061; *Ouellette v. State Farm Mut. Auto. Ins. Co.*, 1994 OK 79, 918 P.2d 1363, 1367 n. 25; *Reeves v. Agee*, 1989 OK 25, 769 P.2d 745, 752 n. 17; *Sooner Federal Savings & Loan Ass'n v. Mobley*, 1981 OK 124, 645 P.2d 1000, 1004 (courts generally do not take judicial notice of proceedings pending in another cause in a different court) (citing *Austin v. State Board of Education*, 1972 OK 55, 497 P.2d 218, 220); see also *Fibikowski v. Fibikowski*, 185 Okl. 520, 94 P.2d 921, 926 (1939) (a trial court cannot take judicial notice of the record in cases brought in another court); *Marlow v. American Suzuki Motor Corp.*, 222 Ill.App.3d 722, 165 Ill.Dec. 166, 584 N.E.2d 345, 348 (1991) (generally, an appellate court will not take judicial notice of a record in another court unless it is incorporated in the proceedings before it).

46. For the teachings of *Collins* (*supra* note 6), see Part II *supra.*

47. For the teachings of *Collins* (*supra* note 6), see Part II *supra.*

*both then and now,* Brown's professional conduct cannot be said to have fallen below the law's standard of due care.

¶ 36 On certiorari granted upon the lawyers' petition, the Court of Civil Appeals' opinion is vacated and the trial court's summary judgment affirmed.

¶ 37 SUMMERS, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, and WATT, JJ., concur.

¶ 38 SIMMS and KAUGER, JJ., concur in result.

### APPENDIX A

¶ 39 BROWN'S SUMMARY–PROCESS EVIDENTIARY MATERIAL

¶ 40 **Exhibit A** - First Amended Petition (1994 malpractice suit)

¶ 41 **Exhibit B - Order disposing of parties' pretrial motions** (1986 antecedent action) was submitted to show that Brown had requested a ruling based on want of § 142.1 notice.

¶ 42 **Exhibit C - COCA opinion** (1986 Kirby v. Bryan, subcontractor's lien enforcement suit)

¶ 43 **Exhibit D - Jury Instruction 19** (1986 antecedent action)

¶ 44 **Exhibit E - Order** (Bryan v. Manley & Houchin, federal district court affirmance of bankruptcy court disposition, holding the 1986 state-court judgment to be nondischargeable) was submitted to show that the bankruptcy court rejected the clients' *valid-lienable-claims* argument and that bankrupt is barred by issue preclusion from relitigating the validity of that defense.

¶ 45 **ANALYSIS**—After entry of judgment in the antecedent state case, the former clients filed for bankruptcy. Their request to have the Bryans' judgment *declared dischargeable was denied.* The bankruptcy court rejected the "valid-lienable-claims" defense. *In re Manley,* 135 B.R. 137 (Bankr.N.D.Okla.1992). The U.S. District Court for the Northern District of Oklahoma affirmed the bankruptcy court's ruling on nondis-chargeability of the judgment. *Manley v. Bryan,* No. 92–C–0029–B (N.D. Okla., Order July 29, 1992). Brown invoked the defense of issue preclusion based on the bankruptcy court's disposition and its affirmance.

¶ 46 Brown's issue-preclusion argument is neither relevant nor necessary to his defense that the law *stood unsettled* at the critical time as to whether owner (as record owner) was in constructive occupancy of the dwelling and as to the legal impact on contractor's liability to owner of subcontractors' failure to give the § 142.1 notice.

¶ 47 **Exhibit F - Letter to Frank R. Patton** from law firm retained to represent Manley and Houchin in the Court of Appeals (at the rehearing stage in the 1986 antecedent action), requesting the clients' files in the case

¶ 48 **Exhibit G - Appellants' (clients') petition for rehearing** and supporting brief (1986 antecedent action, in the Court of Appeals).

¶ 49 **Exhibit H - Order** denying defendant's (Manley's) motion for summary judgment (bankruptcy court order denying Manley's quest for discharge of the 1986 judgment).

### APPENDIX B

¶ 50 **CLIENTS' SUMMARY–PROCESS RESPONSIVE MATERIAL**

¶ 51 **Exhibit 1 - Motion for pre-trial rulings on certain issues of law** (1986–antecedent action) was submitted to show that the pretrial motion was presented solely on behalf of Watkins, not on behalf of Manley and Houchin.

¶ 52 **Exhibit 2 - Reply to plaintiffs' response to defendants' motion for pretrial rulings on certain issues of law** (1986 antecedent action) was submitted to show that the pretrial ruling was urged solely for the purpose of reducing damages rather than as a liability-defeating defense.

¶ 53 **ANALYSIS**—Sufficiency of Brown's Pretrial Motion As a Liability–

Defeating Defense Based On Want of Mandatory Notice.

¶ 54 Clients submitted exhibits 1 and 2 to show that Brown did not present an efficacious defense on their behalf based on subcontractors' failure to give mandatory notice in the antecedent 1986 action.

¶ 55 Whether the owner was entitled to mandatory notice depends on whether he fell within the purview of § 142.1 as a person who "presently occupied" the dwelling at the commencement of labor (or provision of supplies). Assuming that notice was the owner's due, the record does not support clients' argument that Brown's pretrial request was insufficient as a "valid-lienable-claims defense." *A common defense pressed on behalf of one defendant inures to the benefit of the other defendants where there exists a common defense available to all of them. Enochs v. Martin Properties, Inc.,* 1997 OK 132, 954 P.2d 124, 129–130. The clients' liability in the 1986 action was derivative and hence depended on a finding that the corporation was liable. 42 O.S.1991 § 153(3). The pretrial motion was sufficient to show that Brown had pressed a lack-of-notice defense on behalf of Manley and Houchin.

¶ 56 The burden then shifted onto the clients to show, by responsive probative material, that Brown's nisi prius defense conduct was nonetheless substandard. The clients argued that the pretrial motion had limited use for mitigation of damages and was hence inefficacious as a liability-defeating defense. Their evidentiary material does not indicate the motion's *limited* use. All that we can tell from this record is that the defense was raised and that the court rejected it. The trial court's negative response may have rested on its view that notice (a) was not the owner's due or (b) was irrelevant to the owner's claim against the contractor.

¶ 57 Clients' evidentiary material fails to disclose substandard defense conduct against the owner's claim in the earlier state-court litigation. A lawyer's lack of success in pressing the critical motion is not proof of his breach of due care. Nor can Brown's failure to re-press that defense in the light of clearly unsettled law (at the critical time of commencement) be deemed substandard defense conduct.

¶ 58 **Exhibit 3 - Motion for "partial summary judgment" with brief in support and exhibits** (owner's motion in 1986–Kirby v. Watkins, subcontractor lien enforcement suit)

¶ 59 **Exhibit 4 - Plaintiffs' answers to interrogatories** (1986–antecedent action; dated 19 September 1988)

¶ 60 **ANALYSIS:**—Clients' evidentiary material showing the owner's present (constructive) occupancy of the home does not lend support to their position in light of the unsettled nature of the law. *See* Part III of the opinion's text.

¶ 61 Clients argue that Brown knew that the owner "presently occupied" the home being remodeled by Watkins and that none of the subcontractors had given the owner any notice that liens could be filed against the home. Because the law was not clearly settled that an absent owner's constructive occupancy of property entitled it to a § 142.1 notice, these evidentiary materials are insufficient to support clients' negligence claim.

¶ 62 **Exhibit 5 - Jury Instruction 19** (1986 antecedent action)

¶ 63 **Exhibit 6 - Proposed Jury Instruction 14** (1986 antecedent action)

¶ 64 **Exhibit 7 - Amended pre-trial conference order** (1986 antecedent action)

¶ 65 **Exhibit 8 - Affidavit of Jim D. Manley**

¶ 66 **Exhibit 9 - Clients' opening brief in an appeal from order of the bankruptcy court** (1992 Appeal, U.S.Dist.Court. for the Northern Dist. of Oklahoma)

¶ 67 **Exhibit 10 - Deposition of Jack L. Brown**

¶ 68 **Exhibit 11 - In Re Tefertiller, 60 OBJ 1013–1015 (April 18, 1989)**

¶ 69 **Exhibit 12 - Patton letter to Mitchell O'Donnell** (counsel for owner in 1986–

Kirby v. Watkins, subcontractor lien enforcement suit)

¶ 70 **Exhibit 13** - Deposition testimony of Frank R. Patton, Jr. (1994 malpractice suit)

¶ 71 **Exhibit 14** - Brown letter to Mitchell O'Donnell (counsel for owner in 1986–Kirby v. Watkins, subcontractor lien enforcement suit)

¶ 72 **Exhibit 15 - Summary judgment for owner** (1986–Kirby v. Watkins, subcontractor lien enforcement suit)

¶ 73 **Exhibit 16 - Unpublished COCA memorandum opinion**—Kirby v. Watkins (1986) (subcontractor's lien enforcement suit)

¶ 74 **ANALYSIS:**—The responsive materials from the subcontractor's (Kirby's) lien foreclosure suit against the owner *is not proof that Brown's strategy choices in the 1986 action were in breach of the then applicable norms of law and professional performance. Kirby* does not settle the law. It is an unpublished opinion by an inferior appellate court in another lawsuit—pronounced after COCA's opinion in *C & C Tile* (*supra* note 12) which we hold today does not settle the characteristics of possession that must be met to qualify for notice under § 142.1.

¶ 75 It is not contended that the COCA opinion in *Kirby v. Watkins* has preclusive force or effect. Neither does it appear that the circumstances of owner's possession at the commencement of work by other subcontractors would be the same as the commencement of work by Kirby.

¶ 76 **Exhibit 17 - Deposition testimony of Jack Brown** (1994 malpractice suit)

¶ 77 **Exhibit 18 - Affidavit of Gregg Graves** with copy of handwritten notes that he made while working as a law clerk for the law firm in the defense of the clients in the 1986 action

¶ 78 **Exhibit 19 - Deposition testimony of Jack Brown** (1994 malpractice suit)

¶ 79 **Exhibit 20 - Plaintiffs' deposition exhibit 14**

¶ 80 **Exhibit 21 - Deposition testimony of Jack Brown** (1994 malpractice suit)

¶ 81 **Exhibit 22 - Affidavit of Mark A. Craige** (re. the national standard of care and skills applicable to lawyers in the United States).

¶ 82 **Exhibit 23 - Clients' petition for rehearing and supporting brief** in Court of Civil Appeals (1986 antecedent action)

¶ 83 **Exhibit 24 - Order staying appeal of bankruptcy court's order,** pending resolution of the appeal in the 1986 judgment on jury verdict (1992 Appeal, U.S.Dist. Court for the Northern Dist. of Oklahoma).