2012 OK CIV APP 13

NORTHWEST ROOFING SUPPLY, INC., an Oklahoma corporation, Plaintiff/Appellee,

v.

ELEGANCE IN WOOD, LLC; Elton Rhoades, Jr. and Malissa M. Rhoades, husband and wife; and Kevin Jones, Defendants/Appellants.

No. 107,676.

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 4, 2011.

Certiorari Denied Nov. 21, 2012.

Gerald E. Kelley, Gerald E. Kelley, LLC, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

John W. Turner, Oklahoma City, Oklahoma, for Defendants/Appellants.

JOHN F. FISCHER, Vice–Chief Judge.

¶1 Elton and Malissa Rhoades appeal the denial of their request to vacate a default judgment. The judgment in this case was

obtained to enforce a materialmen's lien. However, pre-lien notice was not provided to the Rhoadeses as required by law. As a result, the lien was unenforceable and the judgment should have been vacated. Therefore, we reverse the denial of the Rhoadeses' request for relief from the judgment and remand for further proceedings.

## BACKGROUND

¶2 The Rhoadeses employed Elegance In Wood, LLC to remodel their home. Elegance contracted with Northwest Roofing Supply, Inc., to supply materials for the work. When the project was completed, the Rhoadeses paid Elegance the full amount due. The last check to Elegance was issued in May 2008. Elegance did not pay Northwest. Northwest filed a materialmen's lien against the Rhoadeses' home on July 2, 2008, recording that lien with the Oklahoma County Clerk. On November 3, 2008, Northwest filed suit to foreclose its lien. The Rhoadeses were served the following day. Malissa Rhoades called counsel for Northwest to explain that they had paid their contractor. However, when the Rhoadeses failed to file an answer, Northwest obtained a judgment by default on November 26, 2008. A journal entry reflecting that judgment was filed December 1, 2008.

¶3 The Rhoadeses employed counsel, who contacted counsel for Northwest prior to the expiration of thirty days after entry of the judgment in an attempt to resolve the matter. Counsel for the Rhoadeses understood from that conversation that Northwest would vacate or consider voluntarily vacating its judgment. However, counsel for the Rhoadeses did not seek relief from the judgment in the district court until more than thirty days after the judgment was entered. On February 11, 2009, counsel for the Rhoadeses filed a petition seeking to vacate the November 26, 2008 judgment pursuant to 12 O.S.2001 § 1031. After hearing argument from counsel, the district court denied the motion to vacate the judgment. The Rhoadeses appeal.

## STANDARD OF REVIEW

¶4 The standard for review of a district court order granting or denying a petition to vacate is whether the trial court abused its discretion. "An abused judicial discretion is manifested when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Patel v. OMH Med. Ctr., Inc.,* 1999 OK 33, ¶20, 987 P.2d 1185, 1194 (footnote omitted). An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. *Spencer v. Oklahoma Gas & Elec. Co.,* 2007 OK 76, ¶13, 171 P.3d 890, 895.

> In previous cases reviewing a trial court's ruling either vacating or refusing to vacate a default judgment, we have considered the following: 1) default judgments are not favored; 2) vacation of a default judgment is different from vacation of a judgment where the parties have had at least one opportunity to be heard on the merits; 3) judicial discretion to vacate a default judgment should always be exercised so as to promote the ends of justice; 4) a much stronger showing of abuse of discretion must be made where a judgment has been set aside than where it has not.

*Ferguson Enters., Inc. v. H. Webb Enters., Inc.,* 2000 OK 78, ¶5, 13 P.3d 480, 483.

## ANALYSIS

¶5 The facts dispositive of this appeal are established by the Rhoadeses' verified petition to vacate and Northwest's petition and answer. Although Northwest's petition and answer are not verified, pleading admissions may supply facts necessary to an appellate decision. *State ex rel. Macy v. Bd. of County Comm'rs,* 1999 OK 53, n. 8, 986 P.2d 1130, 1134 n. 8; *Stork v. Stork,* 1995 OK 61, n. 10, 898 P.2d 732, 737 n. 10. These facts are:

1. The property subject to Northwest's lien is the Rhoadeses' homestead.

2. Neither Northwest nor Elegance provided the notice specified in 42 O.S. 2001 § 142.1.

3. Northwest represented to the district court that its materialmen's lien was enforceable.

4. The Rhoadeses' petition to vacate was filed within two years of the judgment sought to be vacated.

## I. The Section 142.1 Notice Requirement

■ ¶6 The Rhoadeses' primary argument for vacation of the Northwest judgment asserts failure to comply with the notice requirements of 42 O.S.2001 § 142.1.[1] That statute provides:

No lien arising under the provisions of Sections 141 through 153 of this title which affects property presently occupied as a dwelling by an owner shall be enforceable unless, prior to the first performance of labor or the first furnishing of materials by the lien claimant, the original contractor, subcontractor, laborer, or materialman shall have provided to one of the owners a written notice which shall include substantially the following language:

NOTICE TO OWNER

YOU ARE HEREBY NOTIFIED THAT ANY PERSON PERFORMING LABOR ON YOUR PROPERTY OR FURNISHING MATERIALS FOR THE CONSTRUCTION, REPAIR, OR IMPROVEMENT OF YOUR PROPERTY WILL BE ENTITLED TO A LIEN AGAINST YOUR PROPERTY IF HE IS NOT PAID IN FULL, EVEN THOUGH YOU MAY HAVE PAID THE FULL CONTRACT PRICE TO YOUR CONTRACTOR. THIS COULD RESULT IN YOUR PAYING FOR LABOR AND MATERIALS TWICE. THIS LIEN CAN BE ENFORCED BY THE SALE OF YOUR PROPERTY. TO AVOID THIS RESULT, YOU MAY DEMAND FROM YOUR CONTRACTOR LIEN WAIVERS FROM ALL PERSONS PERFORMING LABOR OR FURNISHING MATERIALS FOR THE WORK ON YOUR PROPERTY. YOU MAY WITHHOLD PAYMENT TO THE CONTRACTOR IN THE AMOUNT OF ANY UNPAID CLAIMS FOR LABOR OR MATERIALS. YOU ALSO HAVE THE RIGHT TO DEMAND FROM YOUR CONTRACTOR A COMPLETE LIST OF ALL LABORERS AND MATERIAL SUPPLIERS UNDER YOUR CONTRACT, AND THE RIGHT TO DETERMINE FROM THEM IF THEY HAVE BEEN PAID FOR LABOR PERFORMED AND MATERIALS FURNISHED.

The applicability of section 142.1, and therefore the viability of the Rhoadeses' argument, requires the existence of two facts: (1) a lien arising pursuant to sections 141 through 153 of Title 42, and (2) property presently occupied as a dwelling by an owner.

¶7 Although Northwest argues that the Rhoadeses did not produce "one scintilla" of evidence to establish their right to section 142.1 notice, the order appealed resulted from the district court's refusal to vacate a default judgment. Consequently, the evidentiary record is very limited. Further, it is clear from the transcript of the hearing on the Rhoadeses' petition to vacate that the district court considered only issues of law to be necessary to the disposition of the petition, and neither party offered evidence in support of their respective positions. Nonetheless, the Rhoadeses' petition was verified, and there is some documentary evidence supporting Northwest's motion for default judgment and the Rhoadeses' petition to vacate. Therefore, from this record, it is apparent that Northwest was a subcontractor to Elegance supplying materials for the remodeling work Elegance contracted with the Rhoadeses to perform. Section 143, "Lien by or Through Subcontractor" provides, in part:

Any person who shall furnish any such material ... as a subcontractor ... may obtain a lien upon such land, or improvements, or both, from the same time, in the same manner, and to the same extent as the original contractor, for the amount due him for such material....

■ ¶8 The requirement for present occupancy was addressed by the Supreme Court in *Manley v. Brown*, 1999 OK 79, 989 P.2d

---

1. The Rhoadeses do not raise, and we do not address, the applicability of sections 142.6, "Pre-Lien Notice" or 143.1, "Notice–Filing of Lien Statement–Fees" of Title 42.

448, which found the law with respect to this requirement unsettled. However, the facts in *Manley* are distinguishable. There, the homeowners contracted for remodeling to be completed before they moved into their newly purchased home. Further, having personally discharged any liens by subcontractors, the owners sued their general contractor and two of its principals and recovered a judgment. The *Manley* litigation involved a suit by the principals of the general contractor against their attorney, claiming he should have raised the subcontractors' failure to comply with section 142.1 as a defense to the owners' suit against the general contractor and its principals. None of those facts are present here. There is no evidence the Rhoadeses vacated their home during the remodeling. Even had they done so, they would still have satisfied the occupancy requirement. *See C & C Tile & Carpet Co. v. Aday*, 1985 OK CIV APP 8, ¶ 15, 697 P.2d 175, 178 (finding constructive occupancy sufficient where the owners temporarily moved out during remodeling). Although critical of the "constructive occupancy" concept, the *Manley* Court distinguished *C & C Tile* on the basis that the owners did not initially move in until after remodeling was complete. Here, the record establishes that the house subject to Northwest's lien was the Rhoadeses' homestead.

> The term "homestead", as used in the provisions of the Ad Valorem Tax Code governing homestead exemptions, shall mean and include the actual residence of a natural person who is a citizen of the State of Oklahoma, provided the record actual ownership of such residence be vested in such natural person residing and domiciled thereon.

68 O.S. Supp.2003 § 2888(A)(1). Further, the second of two checks written by the Rhoadeses to their general contractor for the work done was written within two weeks of the last date on which Northwest claims to have furnished materials and shows the address used by Northwest in filing its lien. The first check, written the day before Northwest first provided materials, shows the same bank account but a different address. Nonetheless, the limited evidentiary record in this proceeding to vacate a default judgment supports the Rhoadeses' argument for the applicability of section 142.1.[2]

## II. The Validity of Northwest's Judgment

■ ¶ 9 Because Northwest did not provide the notice required by section 142.1, the Rhoadeses argue that Northwest's lien was unenforceable and, therefore, the district court was misled as to the validity of the lien when it entered judgment for Northwest. Northwest's petition alleged that it "perfected its lien against the [Rhoadeses'] property ... filing a Mechanic's Lien Statement." The Journal Entry of Judgment prepared by Northwest recites that Northwest perfected its lien by filing the Mechanic's Lien Statement. A copy of the lien is attached to both documents. Although we agree with Northwest that it was not required to plead compliance with section 142.1, that does not resolve its entitlement to foreclose that lien.

■ ¶ 10 "Perfected" is not a term that is used in section 143 or defined in the other relevant statutes in Title 42. The term is defined in the Uniform Commercial Code as the statutory steps required when a security interest attaches to establish the priority of that interest with respect to other creditors. *See* 12A O.S.2001 § 1-9-308 (distinguishing between the attachment of a lien and perfection of the lien holder's priority as to other lien claimants). However, that does not appear to be the meaning intended by Northwest. Rather, Northwest appears to use the term to describe the steps taken necessary to enforce its lien. In *In re Shawver and Son, Inc. v. Tefertiller*, 1989 OK 60, ¶ 16, 772 P.2d 396, 399, the Supreme Court used the term in this sense when deciding a subcontractor's

---

2. We do not decide whether the Rhoadeses were ultimately entitled to the notice required by section 142.1, or whether Northwest's failure to provide that notice defeats its claim for payment. Determination of various issues beyond the scope of this appeal may be necessary to resolve the ultimate liability of the parties in this case. *Cf.*

*Manley v. Brown*, 1999 OK 79, ¶ 20, 989 P.2d at 455. Those issues can be determined on the merits of the case in the district court. It is the province of the district court to first determine issues of fact. *Evers v. FSF Overlake Assocs.*, 2003 OK 53, ¶ 18, 77 P.3d 581, 587.

805

right to construction trust funds established by a property owner pursuant to sections 152 and 153 of Title 42.[3] Because the subcontractor "failed to timely perfect a mechanics' and materialmen's lien," the Court answered a certified question from the federal bankruptcy court in the affirmative: "perfection of a mechanic's and materialmen's lien pursuant to 42 O.S.[2001] § 143 is required to assert a claim upon construction trust funds under 42 O.S.[2001] §§ 152, 153." *Tefertiller*, 1989 OK 60, ¶¶ 1, 3, 772 P.2d at 397. "The very existence and perpetuation of a subcontractor's lien, including the court's jurisdiction to enforce it, rests solely upon substantial compliance with the lien statute." *Id.* ¶ 16, 772 P.2d at 399.

¶ 11 Although *Tefertiller* deals with the enforceability of a subcontractor's lien against construction trust funds, its general holding is applicable to this case. "[A] subcontractor is required to perfect a mechanics and materialmen's lien in order to create a valid lienable claim and then invoke liability under the construction trust fund statutes. The vitality of a subcontractor's

lien depends upon compliance with the lien statutes...." *Manley v. Brown*, 1999 OK 79, ¶ 18, 989 P.2d at 454. As the Supreme Court has consistently held:

A statutory lien ... stands in derogation of the common law. It must hence be strictly confined to the ambit of the enactment giving it birth.... The terms prescribed by statute cannot be ignored. They are the measure of the right and of the remedy.

*Riffe Petroleum Co. v. Great Nat'l Corp., Inc.*, 1980 OK 112, ¶ 5, 614 P.2d 576, 579. Consequently, whether a lien is sought to be enforced against construction trust funds or the proceeds from the sale of the property securing the lien, compliance with the lien statutes, including mandatory notice provisions, is required prior to resorting to the enforcement provisions authorized by Title 42.[4]

¶ 12 Regardless of the sense in which Northwest intended to use the term "perfected," it does not appear from this record that that Northwest had satisfied all statutory

**3.** 42 O.S.2001 § 152 provides:
(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract.
(2) The monies received under any mortgage given for the purpose of construction or remodeling any structure shall upon receipt by the mortgagor be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such mortgagor by reason of such building or remodeling contract.
(3) The amount received by any vendor of real property under a warranty deed shall, upon receipt by the vendor, be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such vendor or his predecessors in title by reason of any improvements made upon such property within four (4) months prior to the delivery of said deed.
42 O.S. Supp.2002 § 153 provides:
(1) The trust funds created under Section 152 of this title shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid.

(2) If the party receiving any money under Section 152 of this title is an entity having the characteristics of limited liability pursuant to law, such entity and the natural persons having the legally enforceable duty for the management of the entity shall be liable for the proper application of such trust funds and subject to punishment under Section 1451 of Title 21 of the Oklahoma Statutes. For purposes of this section, the natural persons subject to punishment shall be the managing officers of a corporation and the managers of a limited liability company.
(3) The existence of such trust funds shall not prohibit the filing or enforcement of a labor, mechanic or materialmen's lien against the affected real property by any lien claimant, nor shall the filing of such a lien release the holder of such funds from the obligations created under this section or Section 152 of this title.

**4.** *Cf. Smith v. Westgate Oil Co.*, 1936 OK 94, ¶ 0, 53 P.2d 1090 (Syllabus 3) ("In an action by an attorney against his clients' adversary to recover an attorney fee due him from his client ... it is essential that the attorney preserve and perfect a lien on his clients' cause of action by indorsing a lien claim on his pleading or serving notice on his clients' adversary setting forth the nature of his lien and the extent thereof, prior to a settlement of his clients' cause of action or claim.").

prerequisites necessary to the enforcement of its lien. Consequently, it was not in a position to represent to the district court that it was entitled to a judgment enforcing its lien.

### III. Section 1031

¶ 13 The Rhoadeses' petition sought to vacate the Northwest judgment pursuant to 12 O.S.2001 § 1031, and particularly paragraph 4 of that provision: "The district court shall have power to vacate or modify its own judgments or orders ... (4) For fraud, practiced by the successful party, in obtaining a judgment or order." Here, we do not deal with fraud in its actual and intentional sense. Nonetheless, constructive fraud results from any "breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him." 15 O.S.2001 § 59. The judgment obtained by Northwest is predicated on this type of breach of duty. "Although a party may keep absolute silence and violate no rule of equity, yet, if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to disclose the whole truth." *Uptegraft v. Dome Petroleum Corp.*, 1988 OK 129, ¶ 12, 764 P.2d 1350, 1353.

¶ 14 Therefore, the Rhoadeses have established the applicability of section 1031(4). Their entitlement to relief depends on the timing of their petition to vacate.

> [R]elief from a judgment in a statutory proceeding brought pursuant to § 1031 may be predicated upon intrinsic as well as extrinsic fraud. Only where vacation is sought in an independent action pressed after the lapse of the statutory period for bringing a § 1031 proceeding is the petitioner circumscribed by the extrinsic-fraud requirement.

*Patel*, 1999 OK 33, ¶ 23, 987 P.2d at 1195. Intrinsic fraud involves conduct during the course of trial.

> If during the trial the successful party urges forged instruments, or perjured testimony or fails to introduce witnesses of whom he has knowledge and whose testimony would help his adversary and impair his own case, he is guilty of fraud; but it is intrinsic fraud, for relief from which application must be made to the court having jurisdiction of the issues joined and tried.

*Id.* ¶ 25, 987 P.2d at 1196. The "statutory period" for bringing an action based on intrinsic fraud is two years. 12 O.S.2001 § 1038. The Rhoadeses' petition to vacate was made to the court that granted the judgment, it alleged that the judgment was based on a misrepresentation of fact essential to the judgment, and it was filed within the time period required for the vacation of a judgment based on intrinsic fraud. The Rhoadeses' petition should have been granted.

### CONCLUSION

¶ 15 Northwest Roofing Supply, Inc., filed a materialmen's lien pursuant to 42 O.S.2001 § 143 with respect to property owned by Elton and Malissa Rhoades. Northwest represented to the district court that it was entitled to foreclose its lien and obtained a judgment of foreclosure. Within two years of the judgment, the Rhoadeses filed a petition to vacate that judgment pursuant to 12 O.S.2001 § 1031(4) arguing that the judgment was obtained by fraud. However, Northwest did not comply with the notice requirements of section 142.1. Therefore, the record does not show that Northwest was entitled to foreclose its lien, and section 1031(4) authorized the vacation of the Northwest judgment. The order denying the Rhoadeses' petition is reversed, and this case is remanded with directions to vacate the judgment in favor of Northwest and for further proceedings consistent with this Opinion.

¶ 16 **REVERSED AND REMANDED WITH DIRECTIONS.**

BARNES, P.J., and WISEMAN, J. concur.