1998 OK CIV APP 98

**CATE CHIROPRACTIC CENTER,**
Petitioner,

v.

**SOUTHERN HILLS RETIREMENT CENTER, Connecticut Indemnity Company and the Workers' Compensation Court,**
Respondents.

No. 90597.

Court of Civil Appeals of Oklahoma,
Division No. 3.

June 2, 1998.

Bryce A. Hill, Hill & Knight, Tulsa, for Petitioner.

Pat A. Padgett, Whitten, Layman, MacKenzie, Padgett and Whitten, Tulsa, for Respondents.

OPINION

ADAMS, Judge.

¶1 On January 20, 1997, and again on January 21, 1997, Claimant Pamela Evans was injured by a patient during her employment by Southern Hills Retirement Center. She was seen at an emergency room and, on January 24, 1997, began treatment with Dr. Thomas Cate at Cate Chiropractic Center. Under an agreement between her counsel and her employer's insurance carrier (CIC), on February 10, 1997, Claimant saw Dr. Bryan J. Hawkins, an orthopedic specialist, who prescribed a course of physical therapy. Claimant also received chiropractic treatment from Dr. Cate throughout February and in early March.

¶2 In a letter dated March 3, 1997, a claims agent for CIC advised Dr. Cate that care rendered to Claimant after February 10, 1997, was not authorized because "[w]e have an agreement w/[Claimant]'s atty for a physician." Dr. Cate continued to treat Claimant until March 11, 1997. A March 12, 1997

letter from CIC to Dr. Cate regarding five treatments between February 17, 1997 and February 26, 1997, advised "[c]are not authorized. Accordingly, payment is being denied." By another letter, dated March 21, 1997, CIC advised Dr. Cate that payment was also being denied for treatments on March 4, 6 and 11, 1997. Claimant received temporary total disability benefits and settled her claim for permanent partial disability on June 25, 1997.

¶3 Dr. Cate later filed a Form 19, asking for payment of his charges for treating Claimant. The Workers' Compensation Court considered Dr. Cate's request for payment at a hearing where no testimony was adduced. The parties submitted the case solely on argument by counsel and documentary evidence. The Workers' Compensation Court found "[t]hat all treatment after February 10, 1997 was unauthorized," but that Cate Chiropractic Center was to receive judgment for $500 of the $1,223.64 charges claimed. This review proceeding followed.

¶4 Dr. Cate argues that because he was the initial treating physician it was not necessary for him to receive authorization from Employer's insurance carrier for the treatment he administered to Claimant. He claims that by the time he received notice CIC considered his treatments to be unauthorized he had rendered all but two treatments. He argues he could not be expected to surmise that he was not the treating physician from the circumstances. We disagree with his analysis of the facts and conclude that competent evidence exists in this record which supports the order of the Workers' Compensation Court.

¶5 A February 4, 1997 letter from Dr. Cate acknowledges that he is aware Claimant will be seeing Dr. Hawkins under an agreement between her counsel and CIC's adjuster. Dr. Cate's letter advises Dr. Hawkins of his diagnosis of Claimant, that she has been seen four times, and that he is "in full agreement with the request for your evaluation." Thus, the Workers' Compensation trial court had before it evidentiary materials indicating Dr. Cate was aware of Dr. Hawkins' impending involvement in Claimant's treatment.

¶6 Further, comments in a March 7, 1997 letter, (in which Dr. Cate complained to CIC about the way he perceived Claimant was being handled by CIC and by Claimant's counsel), may also be interpreted as showing Dr. Cate was aware prior to February 10, 1997, that Claimant was being *treated* by Dr. Hawkins, and that Dr. Hawkins was not merely evaluating her condition or giving a second opinion.

¶7 Dr. Cate argues that any agreement to remove him as Claimant's treating physician "was void as he was never advised of same." Dr. Cate has directed our attention to no statute, rule, or other authority requiring that he be provided notice of Claimant's change in treating physicians, and we therefore need not reach that issue. Because her employer did not participate in a certified workplace plan, Claimant clearly had a right to choose her initial treating doctor, *and* she also had a right to agree to change her treating doctor. *See* 85 O.S.Supp.1996 § 14. It is unrefuted that Claimant saw Dr. Hawkins on February 10, 1997, and thereafter began physical therapy, including back school and strengthening, as Dr. Hawkins had ordered.

¶8 Whether Dr. Cate still was Claimant's treating physician after she began treatment with Dr. Hawkins was a question of fact for the Workers' Compensation Court. The existence of evidence in the record supporting a differing conclusion is not material to our analysis where, as here, there is any competent evidence supporting the conclusion reached by the Workers' Compensation Court. *Riley v. Cimarron–Empire Construction Company,* 1966 OK 236, 420 P.2d 550. The order is neither contrary to law nor unsupported by any competent evidence, and it is sustained.

SUSTAINED.

BUETTNER, P.J., concurs; HANSEN, J., dissents.