2002 OK CIV APP 65

**In the Matter of K.G., a Deprived Child under age 18, Theodore and Veda G., Plaintiffs/Appellants,**

v.

**DEPARTMENT OF HUMAN SERVICES, Defendant/Appellee.**

**No. 96,682.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Decided May 7, 2002.

J. Townley Price, Tulsa, OK, for Plaintiffs/Appellants.

Catherine O'Leary, Tulsa, OK, for Defendant/Appellee.

KEITH RAPP, Judge.

¶ 1 K.G.'s foster parents, Theodore Gougolis and Veda Gougolis (Foster Parents), appeal the trial court's denial of their objection to the removal of K.G. from their home by the Oklahoma Department of Human Services (DHS).[1]

## BACKGROUND

¶ 2 Foster Parents' appeal raises two questions: (1) Whether the trial court erred in its ruling regarding the standard of proof placed upon DHS; and (2) Whether the trial court

1. K.G. has also been identified in the record as K.D.

erred in admitting hearsay evidence and, if so, whether the evidence supports the trial court's ultimate ruling. Thus, a brief review of the facts will suffice.

¶3 Veda Gougolis is K.G.'s natural grandmother and Theodore Gougolis is K.G.'s step-grandfather. K.G.'s mother is deceased and K.G.'s father's parental rights had been terminated. K.G. and an older brother were placed in foster care in the Gougolis' home, but only after a hearing when DHS had refused to place K.G. there.

¶4 DHS involvement began in Tulsa County and then the matter was transferred to Rogers County, the Foster Parents' residence. The Foster Parents and DHS entered into a foster care contract. Among the terms of foster care is the prohibition of corporal punishment in any form.

¶5 K.G.'s older brother is under the care of a physician for treatment for Reactive Attachment Disorder (RAD). In April 2001, he appeared in school showing signs of having been struck on the face and head. He reported to his teacher that "poppy" (his name for Theodore Gougolis) had hit him. Subsequent investigation indicated that he had also been made to stand on one foot for extended periods of time and had received other disciplines deemed inappropriate by DHS' witnesses for a young boy with RAD. Other testimony disclosed that Veda Gougolis had been loudly abusive to K.G. during visits to the physician and to children's specialists. Theodore Gougolis specifically denied striking the brother, and minimized the discipline imposed upon him.

¶6 On about April 24, 2001, the brother was removed from the home. On May 11, 2001, a formal report issued finding abuse "confirmed." A series of meetings involving DHS staff and the brother's treating physician took place in April and May of 2001, concerning K.G. DHS personnel experienced internal communication problems because of the transfer of the case from Tulsa County to Rogers County. However, the decision was made to remove K.G. from the home on an emergency basis and K.G. was removed on May 18, 2001.

¶7 DHS stated the reasons for removal in the "Notice Of Child's Removal From Out Of Home Placement." That Notice stated that the reasons were "recent confirmation of child abuse (physical); age of child; background information."

¶8 Foster Parents filed an objection to the removal.[2] The Foster Parents based their objection to the removal on the grounds that removal was not in the best interest of K.G. and that DHS acted arbitrarily and capriciously when it removed K.G. from their home. Their objection noted that Foster Parents were also K.G.'s grandparents and that she had lived with them since the time she was an infant. They further stated that removal would be inconsistent with K.G.'s treatment and service plan.[3]

¶9 The trial court set the objection to removal for hearing. At the hearing, the trial court ruled that the removal was based upon an emergency. The court further ruled that the "standard it would impose for purposes of an emergency removal would be the same as that applied in 10 O.S. Supp.2000, 7003-2.1 (A), i.e., the Department would need to present enough evidence to establish to the Court a reasonable suspicion to believe that the child was in need of protection due to abandonment, abuse, neglect or was in surroundings such as to endanger the welfare of the child."[4] Foster Parents challenge this latter ruling here.

¶10 The trial court denied Foster Parents' objection to K.G.'s removal from their foster care. Foster Parents appeal.

## STANDARD OF REVIEW

¶11 This appeal presents questions concerning legal rulings made by the trial court during the course of the hearing. The appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.,* 1996

2. District Court File at page 66.

3. The treatment and service plan are not part of the appellate record.

4. Journal Entry of Judgment, ¶3, record at 58.

OK 125, 932 P.2d 1100 n. 1. This Court's standard of review is *de novo* and gives no deference to the legal rulings of the trial court. *State, ex rel. Dept. of Human Services, ex rel. Jones v. Baggett,* 1999 OK 68, 990 P.2d 235. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.,* 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

## ANALYSIS AND REVIEW

### Evidentiary Rulings

¶ 12 Review of the trial transcript indicates a number of instances where witnesses testified to utterances by third parties. However, Foster Parents here point to a single instance involving the first witness presented by DHS. This witness testified to an event reported by the treating physician involving alleged abusive conduct by Veda Gougolis toward K.G. at the physician's office. The argument is that this event and the conduct of Veda Gougolis then provide the only basis for removal of K.G. Since, according to the argument, the fact of the event and its circumstances were derived from the hearsay testimony of the DHS worker, the evidence does not support the trial court's decision to uphold DHS' removal of K.G. from Foster Parents' care.

¶ 13 The argument fails. Error may not be predicated upon an evidentiary ruling unless a substantial right of the party has been affected. 12 O.S.2001, 2104 (A).

¶ 14 First, the trial court limited the purpose of the DHS worker's testimony and did not admit the testimony to prove the truth of the occurrence of the event at the physician's office. Second, the physician testified in person about the event. Moreover, a case worker also testified to a similar event on a separate occasion. Last, the basis for removal clearly was broader than the ground set out by Veda Gougolis' conduct toward K.G. at the physician's office. Thus, the testimony was not hearsay under the ruling and no substantial right was affected by its admission for a limited purpose.

### The Standard of Proof

¶ 15 The trial court's determination to use the same standard of proof as used for purposes of an emergency removal under 10 O.S. Supp.2000, 7003–2.1 (A)(2) is the issue. In deciding this issue, this Court views the matter of "removal" as one involving two distinct sets of circumstances under the Oklahoma Foster Care and Out-of-Home Placement Act when an emergency is alleged to be involved. First, there is the act of physical removal of the child from the foster home location. Second, there is the act of "removal" by the *placement* of the child into a new foster home environment.

¶ 16 This Court holds that when the trial court is faced with an inquiry into whether an emergency exists to justify *physical removal* of the child from an existing foster home, the reasonable suspicion standard applies. An "emergency situation" is defined in the statute as:

a. an emergency situation. As used in this subparagraph, "emergency situation" means a removal that is

(1) for emergency medical or mental health treatment;

(2) due to substantial noncompliance by the foster parent with applicable contract requirements and agreements such that the health, safety or welfare of the child is endangered, or

(3) due to a pending investigation of allegations of abuse or neglect of a child by a foster parent or other person residing in the foster family home.

10 O.S. Supp.2000, 7208 (D)(3)(a).

¶ 17 The "emergency situation" defined in the foster care part of Title 10 is comparable to the emergency situation contemplated in the pre-petition part of the Code. Thus, concepts of abuse, neglect, endangerment, and the like, serve as grounds to remove a child from a place where such things may be occurring.[5] The protection of

5. In the case of *In re D.R.,* 2001 OK CIV APP 21,

20 P.3d 166, the Court upheld the trial court's

the child justifies a lesser standard upon which to base governmental decision to remove the child pending a prompt hearing.

■ ¶ 18 The Foster Parents challenged DHS' conclusion that an emergency situation existed. This challenge was based largely upon the fact that DHS did not remove K.G. in April of 2001, when the circumstances of physical abuse of her brother surfaced and he was removed from Foster Parents' home, but waited almost a month, until May 18, 2001, before K.G. was removed. This Court finds from a review of the evidence that the trial court had ample grounds to find that an emergency situation existed in May 2001, which justified DHS' decision to remove K.G. The delay from April to May was partly due to the internal lack of communication within DHS and partly due to ongoing investigations. In fact, it is possible to fault DHS for not acting sooner, or at the same time K.G.'s brother was removed.

¶ 19 Here, the trial court utilized the "reasonable suspicion" standard to judge whether DHS was correct in its decision to remove K.G. due to an emergency situation. The trial court *did not* use that standard for the purpose of reviewing any decision by DHS to "remove" K.G. by placing her in another foster home. Clearly, in the latter case, DHS would have to show that its decision to remove K.G. was neither arbitrary nor inconsistent with the child's treatment and service plan.[6] 10 O.S. Supp.2000, 7208 (D)(4).

¶ 20 Moreover, the issue of the nature of proof to uphold a decision by DHS to place a child in a new foster home was not presented below and is not an issue before this Court. The entire trial court hearing was devoted to

evidence concerning the decision to *physically remove* K.G. due to an emergency situation. No evidence was adduced regarding K.G.'s current placement or any decision to place K.G. in a new foster home.

¶ 21 Therefore, this Court holds that the trial court did apply the correct standard of proof to the issue before it. Clearly, Section 7208 contemplates removal under emergency situations. This is evidenced by the provision in the statute dispensing with the advance notice requirements when the child has been in the foster home for three or more months. Moreover, objections by foster parents do not postpone the physical removal of the child in an emergency situation. 10 O.S. Supp.2000, 7208 (D)(3).

¶ 22 When a child has resided with foster parents for more than six months, as is the case here, the foster parents may file objections to the removal. 10 O.S. Supp.2000, 7208 (D)(1)(b). The statute does not make any distinction between objections to physical removals in emergency situations and objections to removals constituting placement in a new foster home.

¶ 23 Here, review of Foster Parents' written objections discloses that they did not specifically make any objections based upon the emergency situation decision. Nevertheless, the conduct of the trial was devoted to the emergency situation aspects of the case.[7]

¶ 24 Section 7208(D)(4) directs the court to hold a hearing on the objections made by Foster Parents. However, the Legislature has not specified a standard by which to adjudicate objections to removals based upon an emergency situation. In other instances involving children the Legislature has provid-

finding of medical neglect when the parents refused medical treatment based upon their religious beliefs. There, the Court stated that the "state has an interest in protecting the lives of its children, which may override parental decisions which threaten a child's life." *In re D.R.*, 2001 OK CIV APP 21 *at* ¶ 20, 20 P.3d at 169.

6. All agree here that the Foster Parents, in their capacity as foster parents, had the right to object to the removal of KG from their home. 10 O.S. Supp.2000, 7208 (D)(1)(b). Moreover, all agree that the Legislature's intent, as expressed in the Oklahoma Foster Care and Out-of-Home Placement Act, is to limit the number of times and

reasons to move a child within the foster care system. 10 O.S. Supp.2000, 7202 (D), 7221(A). Thus, subject to the intent of the Legislature to limit removals, DHS may remove a child from a foster home whenever it is in the best interests of the child. 10 O.S. Supp.2000, 7208 (C).

7. DHS did not object that the trial presentation was outside the scope of the written objections. Moreover, a very liberal interpretation of Foster Parents' allegation that the removal was "arbitrary, capricious and not in the best interest of the child" would encompass a challenge to the emergency situation decision.

ed standards, such as, for example, 10 O.S. Supp.2000, 7 003–1.1 (A)(1), reasonable grounds to believe a child to be deprived; 10 O.S. Supp.2000, 7003–2.1 (A)(2), reasonable suspicion to believe that a child is in need of protection to justify taking child into protective custody; and, 10 O.S. Supp.2000, 7003–2.2, child is in need of emergency medical care. In all matters involving children the ubiquitous criteria of "best interest" and "health, safety, and welfare" may be found throughout the statutes.

¶ 25 The statute does provide that the trial court has the option to uphold the removal or to return the child to the foster home if the court finds the "decision to remove the child was arbitrary or was inconsistent with the child's treatment and service plan." 10 O.S. Supp.2000, 7208 (D)(4). If the court upholds the removal decision, then the court is required to state, in the record, the "reasons why the removal of a foster child from the foster home is in the best interests of the foster child." 10 O.S. Supp.2000, 7208 (F).

¶ 26 Neither Subsection 7208(E) nor Subsection 7208(F) of the statute deal with the standard of proof. However, in this Court's opinion, those provisions pertain to the decision to place the child in a new foster home rather than the decision to act in an emergency situation.

¶ 27 This interpretation is consistent with the overall tenor of the Oklahoma Foster Care and Out-of-Home Placement Act and the express intent of the Legislature to limit movement of a child from one foster home to another. The decision to *move* a child is not the same as a decision to *remove* a child in an emergency situation as was the case here. The former decision involves the child's stability, the child's attachments, and other factors. The function of a foster home environment is to assure stability and to provide for a family setting for the child. 10 O.S. Supp.2000, 7202. Thus, the review of a decision to *move* a child is reviewed on the basis that it cannot be arbitrary nor may it be inconsistent with the treatment and service plan for the child.

[9] ¶ 28 In summary, the trial court correctly required DHS to demonstrate a reasonable suspicion that an emergency situation existed so as to justify removal of K.G. The trial court's decision to uphold the DHS is not contrary to the evidence in support of the conclusion that a reasonable suspicion existed.

¶ 29 AFFIRMED.

¶ 30 COLBERT, P.J., and GOODMAN, J., concur.